# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### FEBRUARY 1998 SESSION



FILED

**April 29, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | |
|---|---|
| STATE OF TENNESSEE, | ) |
| | ) |
| Appellee, | ) |
| | ) |
| VS. | ) |
| | ) |
| FREDERICK OTTITUS EDWARDS, | ) |
| | ) |
| Appellant. | ) |

**C.C.A. NO. 02C01-9704-CC-00157**

**WEAKLEY COUNTY**

**HON. WILLIAM B. ACREE,
JUDGE**

(Sale of cocaine - four counts)

FOR THE APPELLANT:                    FOR THE APPELLEE:

**JOHN E. HERBISON**
2016 Eighth Ave., South
Nashville, TN 37204
    (On Appeal)

**JOSEPH P. ATNIP**
Public Defender
P.O. Box 734
Dresden, TN 38225
    (At Trial)

**JOHN KNOX WALKUP**
Attorney General & Reporter

**RUTH A. THOMPSON**
Counsel for the State
425 Fifth Ave., North
Cordell Hull Bldg., Second Fl.
Nashville, TN  37243-0493

**THOMAS A. THOMAS**
District Attorney General

**JIM CANNON**
Asst. District Attorney General
P.O. Box 218
Union City, TN 38261

OPINION FILED:_____

**AFFIRMED IN PART;
REVERSED AND DISMISSED IN PART**

**JOHN H. PEAY,**
Judge

## O P I N I O N

A Weakley County jury convicted the defendant of four counts of sale of less than 0.5 grams of cocaine. The trial court sentenced him to serve six years on each conviction and ordered the sentences to run concurrently. The defendant was also fined two thousand dollars ($2000). In this appeal as of right, the defendant challenges the sufficiency of the evidence for one of his convictions, the uncorroborated accomplice testimony, and the length of his sentences. After a review of the record and applicable law, we reverse and dismiss one of the defendant's convictions for selling cocaine, but affirm his remaining convictions and the sentences ordered for each of those convictions.

The defendant's convictions stemmed from an undercover operation involving the Drug Task Force of Weakley County. Nathan Jackson, who had been previously arrested on drug charges, agreed to act as an undercover agent for the task force rather than face the consequences of his arrest. Danny Harris, an officer with the task force, testified that Jackson had been paid for each of the "buys" he made. Harris further explained that Jackson had been provided marked money with which to buy the drugs and that Jackson had been wearing a wire transmitter during the transactions.

Harris testified that Jackson had made four buys in May 1996 that related to the defendant. He testified that on May 10, he had given Jackson forty dollars ($40) and that Jackson had gone to the Roxborough area in Martin. Harris explained that Jackson had not been looking for anyone in particular from whom to buy drugs. However, when Jackson returned to the meeting place, Jackson told Harris that the drugs had been purchased from "Fred." The defendant's name is Frederick Edwards. Harris later showed Jackson a photo display of four men, including the defendant. Jackson identified the defendant as the man who had sold him the cocaine. He further testified that he had seen the defendant prior to the May transactions.

2

On May 13, 1996, Jackson was given sixty dollars ($60.00) and he again went to the Roxborough area. Harris testified that Jackson had run into Joe Easley and Easley had made contact with a third person for the drugs. Harris further testified that he had been in the area where Jackson had been buying the drugs and that shortly after the transaction, he had seen Easley riding in a white Cadillac with another man, who he thought was the defendant. David Blurton, an officer with Harris on that day, testified that he had definitely recognized Joe Easley and that he had later identified the defendant after looking at a photograph of him. A check of the car's license plate revealed that it belonged to a man named Chet Graves. Harris testified that Jackson had been familiar with Graves previously and would not have confused Graves with the defendant.

On May 17, 1996, Jackson again went to the Roxborough area with sixty dollars ($60). Through the transmitter, Harris heard Jackson holler to Fred, "What's goin' on, man?" Nothing else was heard on the transmitter and Harris later met Jackson at the meeting place where Jackson produced the rock cocaine.

On May 19, 1996, Jackson again found Joe Easley. This time, Easley took Jackson to Puckett Plaza where Jackson ultimately purchased the cocaine. In the indictment related to this date, the defendant was charged with selling the cocaine to Joe Easley, not Jackson. Easley was then charged with delivering the cocaine to Jackson. Jackson testified that with the exception of this transaction, the cocaine was purchased directly from the defendant.

The defendant testified that he had not sold any drugs to Jackson. He could not specifically identify his whereabouts on those days but said he must have been "around his house" because he was under house arrest on unrelated matters. The defendant lives with his mother in Puckett Plaza. The defendant further testified that Joe Easley and Chet Graves are his cousins. However, he testified he would not have been

3

in Graves' car at any time because he and Graves do not get along. The defendant's mother testified that the defendant is generally called "Frederick" rather than "Fred" but that she had heard some people call him "Fred."

The defendant now argues that the evidence is insufficient to convict him of the May 19, 1996, sale of cocaine to Joe Easley. He also argues that the evidence is insufficient to sustain "some or all convictions in that [he] has been convicted on the uncorroborated testimony of an accomplice." We will address the accomplice issue first.

It is true that in Tennessee a defendant cannot be convicted on the uncorroborated testimony of an accomplice. Sherrill v. State, 204 Tenn. 427, 321 S.W.2d 811, 814 (1959). An accomplice is defined as "a person who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of a crime." Clapp v. State, 94 Tenn. 186, 30 S.W. 214, 216 (1895). To corroborate the testimony of an accomplice, "there should be some fact testified to, entirely independent of the accomplice's evidence, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it." Clapp, 30 S.W. at 216. This corroboration must consist of some fact or circumstance which affects the identity of the defendant.

The defendant's contention that his convictions cannot stand because there was no corroboration of accomplice testimony is without merit. First, the record shows no indication that the defendant made a special request to have the jury charged on the accomplice issue. The jury instructions make no reference to Jackson acting as an accomplice. Thus, the defendant's failure to make such a request constitutes a waiver of the issue. State v. Foster, S.W.2d 846, 848 (Tenn. Crim. App. 1988). Second, even if the defendant had requested such an instruction, he still would not prevail on this issue. Nathan Jackson was employed as a paid informant at the time these offenses were

4

committed. Thus, he cannot be said to have knowingly, voluntarily, and with common intent engaged in the commission of the crimes. Jackson was being used as an informant and was cooperating with the police, thus he could not have been operating with a common intent with the defendant. See Halquist v. State, 489 S.W.2d 88, 94 (Tenn. Crim. App. 1972), overruled on other grounds, 598 S.W.2d 209 (Tenn. 1980). Because Jackson was not an accomplice, his testimony does not need corroboration. State v. Steve Edward Houston, No. 01C01-9606-CC-00280, Giles County (Tenn. Crim. App. filed June 26, 1997, at Nashville); State v. Preston Bernard Crowder and Cynthia Diane Southall, No. 01C01-9304-CR-00143, Davidson County (Tenn. Crim. App. filed March 14, 1995, at Nashville). Therefore, this issue is without merit.

We now turn to the defendant's contention that regardless of the accomplice issue, the evidence is insufficient to support his conviction for the May 19, 1996, transaction. As noted above, this conviction related to the sale of cocaine to Joe Easley, not Jackson. A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well

5

as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

The defendant argues that the evidence was insufficient to show that he was involved in a transaction with Easley that involved cocaine. He further contends that the evidence failed to show that he was in fact the person that supplied Joe Easley with the cocaine that was ultimately delivered to the informant, Jackson. We have no trouble concluding that the evidence did demonstrate that an amount of cocaine was purchased by Jackson on May 19, 1996. Testimony from a TBI special agent forensic scientist confirmed that the purchase contained 0.3 grams of cocaine base. However, we have more difficulty concluding that the evidence demonstrates that the defendant was the seller.

At trial, Jackson was less than clear when he explained the transaction that occurred on May 19, 1996. Jackson testified that he had bought the cocaine from the defendant on all occasions except the last when Joe Easley made the transaction between Jackson and the seller. Jackson does not identify the defendant as the seller. The only other testimony regarding this transaction came from Officer Harris. Harris testified that on this day he had been listening to the transmission from the wireless transmitter worn by Jackson. He testified that Easley and Jackson had gone to Puckett Plaza, a housing complex where the defendant resides. He said that from the transmitter

6

he had heard Joe Easley holler for the defendant. However, he did not hear the defendant's name being called and did not explain how he had known that Easley had been calling for the defendant.

From this evidence, we cannot allow the conviction to stand. Jackson could not identify the defendant as the seller in this transaction. He only assumed that the defendant had supplied Joe Easley with the cocaine. Likewise, Harris did not see the defendant provide the drugs to Easley, nor did Harris testify that he heard the defendant's voice over the transmitter or that even the defendant's name was used. From this minimum amount of evidence, we cannot conclude beyond a reasonable doubt that the defendant sold the cocaine to Easley. Therefore, we dismiss his conviction for the May 19, 1996, transaction. The remaining convictions, however, are affirmed.

As his final issue, the defendant argues that his sentences are excessive. He was sentenced as a Range I standard offender to six years on each conviction, the top of his applicable range for a Class C felony. The defendant argues that the trial court erred when it refused to apply a requested mitigating factor. He contends that the fact that his conduct neither caused nor threatened serious bodily injury should have been used to mitigate his sentence. T.C.A. § 40-35-113(1).

When a defendant complains of his or her sentence, we must conduct a de novo review with a presumption of correctness. T.C.A. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

7

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40-35-210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40-35-210.

In addition, this section provides that the minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Act further provides that "[w]henever the court imposes a sentence, it shall place on the record either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40-35-209." T.C.A. § 40-35-210(f) (emphasis added). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. T.C.A. § 40-35-210 comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal.

8

The defendant argues that the trial court erred when it rejected the application of mitigation factor number one, that his conduct neither caused nor threatened serious bodily injury. The trial court simply stated that the factor did not apply and did not offer any further explanation. The defendant now argues that the "net effect of [his] conduct [was] that the cocaine was removed from the stream of commerce." He further argues that "to contend that [his] conduct with regard to this uningested cocaine caused or threatened injury of any kind, let alone the serious bodily injury referenced in § 40-35-113(1), is unmitigated nonsense."

Many times this Court has addressed mitigation factor one in connection with drug cases. However, different results have been produced. See, e.g., State v. Keel, 882 S.W.2d 410 (Tenn. Crim. App. 1994)(finding factor one not applicable in drug offense cases); State v. Tyrone Clay, No. 02C01-9608-CC-00261, Lake County (Tenn. Crim. App. filed Aug. 18, 1997, at Jackson)(applying factor one to defendant convicted of three counts of sale of cocaine); State v. George E. Martin, Jr., No. 02C01-9512-CC-00389, Madison County (Tenn. Crim App. filed Aug. 18, 1997, at Jackson)(rejecting application of factor where defendant convicted of possession with intent to sell cocaine); State v. William K. Wilson, No. 02C01-9608-CC-00272, Decatur County (Tenn. Crim. App. filed Aug. 5, 1997, at Jackson)(concluding factor one not available for defendant convicted of offense involving a serious drug such as cocaine or crank); State v. Troy Carney and James Andrew Slaughter, Jr., No. 01C01-9412-CR-00425, Davidson County (Tenn. Crim. App. filed Feb. 23, 1996, at Nashville)(applying factor one to defendant Slaughter when he had been convicted of conspiracy and four counts of selling drugs). In this case, we conclude that even if factor one had been applied, it would have been entitled to little weight and would not have affected the length of the defendant's sentences. See State v. Charlie Marshall Floyd, No. 02C01-9611-CC-00434, Obion County (Tenn. Crim. App. filed Sept. 19, 1997, at Jackson)(finding weight to be given this factor would be negligible); State v. Hoyt Edward Carroll, No. 03CO1-9607-CC-00254, Hawkins County (Tenn. Crim.

9

App. filed Aug. 12, 1997, at Knoxville)(finding factor one entitled to little weight in cases involving drugs). Three enhancement factors were clearly shown.[1] A maximum sentence of six years is entirely appropriate for this defendant. We find no abuse of discretion on behalf of the trial court.

In conclusion, we reverse and dismiss the defendant's conviction for the May 19, 1996, transaction. However, we affirm his remaining convictions and the sentences ordered for each of those convictions

_____
JOHN H. PEAY, Judge


CONCUR:


_____
JOSEPH B. JONES, Judge


_____
THOMAS T. WOODALL, Judge

---

[1]The following enhancement factors from T.C.A. § 40-35-114 were applied: the defendant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range (1); that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community (8); and that the instant offense was committed while the defendant was on release status from a previous felony (13). The record clearly supports the application of these factors, and the defendant does not argue that any of the factors were inappropriate.