Willie B. Sherrill

*v.*

State of Tennessee.

(*Nashville,* December Term, 1958.)

Opinion filed January 23, 1959.

428

C. P. J. Mooney and R. G. Draper, Memphis, for plaintiff in error.

James M. Glasgow, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Sherill was indicted for the commission of a crime against nature. He was convicted of this crime and sentenced to serve seven years in the penitentiary. From this conviction he has seasonably appealed, filed briefs, arguments have been heard and we now have the matter for determination.

Section 39-707, T.C.A., makes "a crime against nature" a felony. This statute does not go into detail and set forth what each of these crimes are but we, in *Fisher v. State,* 197 Tenn. 594, 277 S.W.2d 340, have adopted the Maine Court opinion. *State v. Cyr,* 135 Me. 513, 198 A. 743. That Court said in part:

> "The statute gives no definition of the crime but with due regard to the sentiments of decent humanity treats it as one not fit to be named, leaving the record undefiled by the details of different acts which may constitute the perversion. The generality of the prohibition brings all unnatural copulation with mankind or a beast, including sodomy, within its scope." 198 A. 743.

Thus it is that the statute under which this man was indicted and convicted and which was read and charged to the jury includes the crime here charged of fellatio, which in common language means sexual perversion committed with the male sexual organ and the mouth.

According to the evidence as viewed from the State's standpoint a little boy whose surname was Anglin, aged 10 at the time of the commission of the act, and his play-

mate, whose surname was Donaldson, aged 11 at the time of the commission of the act, went to the plaintiff in error's home sometime in the early part of December, 1956. The record shows from the testimony of these two boys that Donaldson had visited the plaintiff in error's home frequently and referred to the plaintiff in error as "Uncle Willie". Uncle Willie lived in a small two-bedroom house with a kitchen and a small living room with a little hallway going back to the bedrooms and a bath between the two rooms. The plaintiff in error had in this house a television and showed these boys movies, etc., at times. It was the practice of the Donaldson boy who was a very near neighbor of the plaintiff in error, to go to his home frequently and push the door open and holler, "Uncle Willie", and then go in. The plaintiff in error did not know the Anglin boy prior to the commission of the first offense alleged herein.

The plaintiff in error was a truck driver and drove heavy trucks into Louisiana and Oklahoma and did most of his truck driving at night and when in Memphis he slept usually during the daytime. On the occasion of the alleged offense for which this conviction was had these two boys went to Sherrill's home and opened the door and hollered "Uncle Willie" and went in. They found the plaintiff in error there at the time dressed in his pajamas. He invited these boys into his house and talked with them for a short time. Afterwards he asked them to accompany him into his bedroom on the back side of the house. There, according to the testimony of these two boys, Donaldson first participated in this loathsome, unspeakable act for some five of six minutes and then he was followed in this commission of the same act by the Anglin boy and then the act was completed

by the Donaldson boy. Each of these boys testified as to the participation in this transaction. At the conclusion, the plaintiff in error gave Donaldson a dollar and instructed him to give Anglin half of it. After they left the house these boys went to a store where they bought soft drinks, etc., and divided the money. The boys also testified of having engaged in an identical act with the plaintiff in error in the month of November prior to the time for which this conviction was had. Each of the boys also observed the other when he engaged in the act with Sherrill.

The plaintiff in error is 54 years of age. He denied most emphatically that Anglin had been in his home and categorically denied having participated in the offense with which he is charged. The evidence on his behalf is to the effect that his wife usually stayed at home during the day while he was sleeping so as to answer the telephone and keep people from bothering him so that he could sleep as he had to have his rest due to the kind of work that he was doing. There was a conflict in this evidence whether she was there or not by some of the neighbors. She testified to the fact that she was there most of the time except when she left on brief periods.

About three weeks after this offense was supposed to have been committed the Anglin boy claimed to have a hurting in his chest and feel sick, etc., and the mother examined him and found he had a red throat. In talking to him he told his mother, presumably, what has been detailed above. She in turn went to the Donaldson boy's mother and told her and then as a result of this the charges were brought and prosecution had which resulted as above indicated.

■ The only evidence in this record as to the commission of this offense is what is detailed by these two boys as above indicated. There is evidence in the record by the mothers that they were told a story by the boys and as a result of that the prosecution was brought and this is claimed by the prosecution to be a corroboration of the fact of the commission of the act. In the first place we do not think that this relation of these boys to the mothers more than three weeks after the offense was committed, under the circumstances which it was related to them, is admissible as any evidence at all. It certainly is not part of the *res gestae*. Under the rule as established by this Court in *Johnson v. State,* 201 Tenn. 11, 296 S.W.2d 832, this evidence is not admissable. In the Johnson case the details were related to the father in a very few hours after the commission of the offense, and in addition to that there was other testimony corroborating the facts of the commission of the offense in that case to make that testimony admissable. Thus it is that we hold that this testimony is not admissable.

There are many assignments of error made by the plaintiff in error, some fifteen or sixteen, but we will not treat each of them and will not discuss the ones that we do discuss *seriatim*. It will be our purpose, in view of the conclusion we have reached herein, to merely discuss those that we think are pertinent for a correct conclusion of this lawsuit.

The most serious question raised by the assignments herein is that these two young boys were accomplices and that their testimony was uncorroborated. It is thus argued that the testimony of Donaldson cannot be corroborative of that of Anglin who is the boy that the offense

was committed on for which this conviction is had. It is very forcefully argued that the trial court at least should have given certain special requests that were offered in behalf of the plaintiff in error for instructions to the jury to the effect that the boys were accomplices and that their testimony must be corroborated, and further, that the jury should have been directed to ascertain whether they were accomplices.

Under the common law the testimony of an accomplice, if it satisfies the jury beyond a reasonable doubt of the guilt of the defendant, may be sufficient to warrant a conviction although it is not corroborated. The obvious dangers of this common-law rule with respect to accomplice testimony has led to the adoption in many States of statutes expressly providing that a person cannot be convicted of a crime on the uncorroborated testimony of an accomplice. In Tennessee in absence of any general statute on the question — there being no general statute as far as we have found or been pointed out—the Courts at the very beginning of the judicial history of this State seeing the weakness in the accomplice's testimony required corroboration in all felony cases. *Clapp v. State,* 94 Tenn. 186, 30 S.W. 214; *Robison & Johns v. State,* 84 Tenn. 146; *Hall v. State,* 71 Tenn. 552; *Fair v. State,* 2 Tenn.Cas. 481 (Shannon's). By Shepardizing these cases many others will be found following this very salutary rule down to the present time. As to what evidence is necessary for the purpose of corroboration the Court early in the Clapp case, *supra,* detailed at some length what was necessary. In that case an accomplice is likewise defined and this Court said this in reference to this corroborative testimony [94 Tenn. 186, 30 S.W. 217]:

"The degree of evidence which shall be deemed sufficient to corroborate the testimony of the accomplice is for the determination of the jury. The law is complied with if there is some other evidence fairly tending to connect the defendant with the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice."

It is generally held that a statement of one accomplice cannot ordinarily be regarded as corroboration of the statement of another. See Wharton's Criminal Evidence, Vol. 2, p. 254, 12th Edition, for cases cited from many jurisdictions in support of this statement.

In this same author's work in Volume 3 at page 410, after discussing what is corroborative evidence in these sex crimes, the author has this to say:

"Generally speaking, the sufficiency of corroborative evidence is a question for the jury, but whether there is any corroborative evidence tending to connect the defendant with the commission of the crime is a question for the Court."

Numerous cases are cited as authority for this statement. We have examined some of them. To us it is a sound practice to follow. We approve of the practice and so hold that when there is any evidence (we will discuss briefly what amounts to some of this corroborative evidence hereinafter) to corroborate the accomplice then under proper instructions from the Court and the jury defining accomplices, etc., this question should be submitted to the jury. Where there is no evidence though to corroborate these accomplices it is a question of law for the Court.

█ From a practical standpoint it is not necessary that there should be corroborating evidence concerning every material fact as to which the accomplice testified, and it is not necessary that the whole case shall be proved outside the testimony of the accomplice; for, otherwise the accomplice's testimony could never avail anything except as cumulative evidence. The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

█ This corroborative evidence need not be direct evidence, but the rule of corroboration is satisfied even though the evidence is entirely circumstantial. The corroboration need not of itself be adequate to support a conviction, but it must be sufficient to meet the requirements of the rule and it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. As this Court said in *Bledsoe v. State,* 135 Tenn. 143, 185 S.W. 1073, 1074, "* * * sound judicial policy dictates that the procedure under the acts should not be too stringent in respect of the proof requisite to support the female." This case of course dealt with the statute requiring corroboration of the abused female. It does not deal with the judicial rule of corroboration in felony cases as heretofore outlined and yet the same

*quantum* or degree of proof is necessary in either instance.

The State cites in behalf of its theory that it is not necessary to have the accomplice's testimony corroborated, a case from Illinois among other out of State cases. Our examination discloses that in Illinois the common-law rule above mentioned is in force and at the time the case referred to was written no statute had been passed requiring corroboration. In other words in Illinois one may be convicted on the uncorroborated testimony of an accomplice. The State thus very forcefully argues that the uncorroborated testimony of an accomplice, where children are involved, is admissible and that children of tender years are incapable of consenting to such crimes. The plaintiff in error likewise argues equally forcefully the opposite of this made by the State to the effect that children of tender years have great imagination and do no appreciate the seriousness of their testimony and thus it is easier for them to fabricate a tale. Thus it is that the plaintiff in error argues that their testimony should be taken with great caution and a *fortiori* their testimony when they testify as accomplices should be corroborated.

The test as to how to qualify a youngster, to weigh his testimony, etc., is rather fully set out in an opinion of this Court as found in *Ball v. State,* 188 Tenn. 255, 219 S.W.2d 166, which goes to some length in stating how these youngsters can be qualified and how their testimony is and should be weighed. We very firmly believe that the testimony of a child as an accomplice should be corroborated. This being true we hold that under a conviction on the uncorroborated testimony of an accomplice even though a child, where there is no corroboration

whatsoever then the Court as a matter of law should declare a mistrial and if the State cannot produce corroborative evidence the District Attorney General should *nolle* the case, the trial court having no authority to direct a verdict. *Taylor v. State,* 191 Tenn. 670, 235 S.W.2d 818.

We have very carefully considered this testimony, the brief of the State and the able arguments made therein and must conclude that there is no testimony herein of corroboration and thus it is that the conviction below is set aside and the case remanded to be proceeded with according to what is said herein.