# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### MARCH 1998 SESSION

FILED

May 20, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | **C.C.A. NO. 03C01-9710-CR-00443** |
| Appellee, | ) | |
| | ) | **HAMILTON COUNTY** |
| VS. | ) | |
| | ) | **HON. GARY D. GERBITZ,** |
| CHRISTOPHER BENARD ERVIN, | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Aggravated Robbery) |

FOR THE APPELLANT:                    FOR THE APPELLEE:


**A. CHRISTIAN LANIER, III**          **JOHN KNOX WALKUP**
615 Lindsay St., Suite 150            Attorney General & Reporter
Chattanooga, TN  37403
        (On Appeal)                   **TODD R. KELLEY**
                                      Asst. Attorney General
**ARDENA J. GARTH**                   John Sevier Bldg.
District Public Defender              425 Fifth Ave., North
                                      Nashville, TN  37243-0493
**MIKE ACUFF**
**HALLIE McFADDEN**                   **WILLIAM H. COX**
Asst. District Public Defenders       District Attorney General
701 Cherry St.
Chattanooga, TN  37402                **DAVID DENNY**
        (At Trial)                    Asst. District Attorney General
                                      Court Bldg., Suite 300
                                      Chattanooga, TN  37402


OPINION FILED:_____


**AFFIRMED**


**JOHN H. PEAY,**
Judge

**O P I N I O N**

The defendant was charged in the indictment with aggravated robbery, and the jury found him guilty of this offense. The defendant now appeals as of right from his conviction, arguing that his conviction is not supported by sufficient evidence. After reviewing the record, we find the defendant's argument to be without merit and affirm his conviction.

At the defendant's trial, Ferris Witcher, a codefendant who pled guilty to aggravated robbery, testified against the defendant. According to Witcher's testimony, he, the defendant, and the defendant's brother had talked about robbing a store, and the defendant proposed robbing a Revco drugstore. The defendant also suggested using a gun during the robbery, and he supplied Witcher, who would actually enter the Revco and demand the money from the Revco cashier, with a .22 caliber revolver.

Witcher testified that they decided to use the defendant's brother's car, a white 1984 Oldsmobile Cutlass sedan, as transportation to and from the Revco. On the way to the Revco, Witcher and the defendant dropped off the defendant's brother at his girlfriend's house. When they arrived at the Revco, the defendant remained in the car while Witcher entered the Revco with the .22 caliber revolver wrapped in scarves and tucked in his coat pocket. Witcher wandered around the store, picking up a bag of chips and some other items. He took those items to the cashier, and when the cashier opened the cash register, he began to pull the scarf-wrapped .22 caliber revolver from his coat pocket and demanded the money from the register. The cashier complied. Witcher quickly returned with the money to the white Oldsmobile, where the defendant was waiting, and Witcher gave the .22 caliber revolver back to the defendant. They left the

2

Revco parking lot, picked up the defendant's brother, and split the money among the three of them.

The State presented several other witnesses at trial, including witnesses who were in the Revco store during the robbery and police officers who were involved in the defendant's arrest and the collection of evidence. These witnesses' testimony showed that police officers responded to the scene of the robbery within minutes of the Oldsmobile leaving the Revco parking lot. The Revco manager told police that one hundred twenty-three dollars ($123) in small bills had been taken by the robber, and an eyewitness gave the police a description of the Oldsmobile in which the robber left. The police officers then left the Revco to search for the suspect car, and a few minutes later, they saw a white Oldsmobile in the vicinity of the crime scene that matched the eyewitness's description. The officers stopped the Oldsmobile, which was driven by Witcher with the defendant and his brother as passengers. From the Oldsmobile, the police officers recovered a .22 caliber revolver and several items reported by Revco as stolen during the robbery, including a bag of chips, furniture polish, and potpourri air freshener. The money recovered from the person of the defendant, his brother, and Witcher totaled one hundred twenty-one dollars ($121) in small bills. From this evidence, the jury convicted the defendant of aggravated robbery.

The defendant argues that this Court should reverse his conviction because the weight of the evidence is contrary to the jury's verdict and his "mere presence" at the crime scene was insufficient to establish he participated in the robbery. In so arguing, the defendant ignores Witcher's testimony, which shows the defendant planned many of the details of the robbery, contending that Witcher's testimony is insufficiently corroborated and thus cannot itself serve as the sole basis for his conviction. The core dispute, then,

is whether the record evidence sufficiently corroborates Witcher's testimony.

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, and factual issues raised by the evidence are resolved by the trier of fact, not this Court. Id. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

The rule is well settled in Tennessee that a defendant cannot be convicted on the uncorroborated testimony of an accomplice. Sherrill v. State, 204 Tenn. 427, 321 S.W.2d 811, 814 (1959). To corroborate the testimony of an accomplice, "there should be some fact testified to, entirely independent of the accomplice's evidence, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it." Clapp v. State, 94 Tenn. 186, 30 S.W. 214, 216 (1895). This corroboration must consist of some fact or circumstance which affects the identity of the defendant. Furthermore, the jury is to determine the degree of evidence necessary

4

to corroborate the testimony of an accomplice, and it is sufficient "if there is some other evidence fairly tending to connect the defendant with the commission of the crime." Id. at 217.

Here, contrary to the defendant's contentions, Witcher's testimony was more than sufficiently corroborated by other evidence at trial. Witcher testified that he and the defendant used the defendant's brother's car, a white 1984 Oldsmobile Cutlass sedan, as transportation to and from the scene of the robbery. An eyewitness who was shopping in the Revco during the robbery testified that the robber left the Revco parking lot in a white late-model Oldsmobile sedan, and the police officer who arrested the defendant testified that the defendant, Witcher, and the defendant's brother were apprehended in a white 1984 Oldsmobile Cutlass in the vicinity of the scene of the robbery. Both of these witnesses, as well as another police officer who collected evidence at the scene of the defendant's arrest, identified the car they saw from photographs of the white 1984 Oldsmobile Cutlass sedan in which the defendant was apprehended. Moreover, the items Witcher testified he took during the robbery were the same items recovered from the Oldsmobile, and the .22 caliber revolver Witcher testified was given to him by the defendant to use during the robbery was also found in the Oldsmobile. Further, Witcher's testimony that he, the defendant, and the defendant's brother split the money he stole from Revco was corroborated by the Revco manager's testimony that the robber stole one hundred twenty-three dollars ($123) in small bills and the police officer's testimony that a total of one hundred twenty-one dollars ($121) in small bills was found on the three men (approximately one-third of the total on each) when they were arrested.

Notwithstanding this evidence, the defendant briefly takes issue with the

5

Revco cashier's testimony that the object Witcher began to withdraw from his coat pocket was perhaps gold-colored, even though the .22 caliber revolver recovered from the Oldsmobile was silver-colored. In this small respect, the Revco cashier's testimony may not corroborate Witcher's testimony, but that does not erase the plethora of evidence that certainly corroborates Witcher's testimony. Even without the Revco cashier's testimony, more than sufficient evidence to corroborate Witcher's testimony remains in the record. This corroborative evidence sufficiently indicates that a robbery was committed, and it identifies the defendant, who was arrested in the Oldsmobile described and identified by several witnesses, as a participant in the robbery. See State v. George Campbell, No. 02C01-9408-CR-00165, Shelby County (Tenn. Crim. App. filed June 28, 1996, at Jackson). Moreover, this evidence, coupled with Witcher's testimony, is sufficient to support the jury's verdict of guilt beyond a reasonable doubt. See Jackson, 443 U.S. at 319.

In sum, the issue raised by the defendant lacks merit. Accordingly, we affirm the defendant's conviction for aggravated robbery.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
PAUL G. SUMMERS, Judge

_____
CORNELIA A. CLARK, Special Judge

6