IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1998 SESSION

FILED

October 7, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 01C01-9710-CR-00491 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. SETH NORMAN, |
| EDWARD ANTHONY JOSLIN, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Conspiracy to Possess with Intent, |
| | ) | Possession with Intent to Deliver |
| | ) | (2 counts), and Delivery of Marijuana) |

FOR THE APPELLANT:           FOR THE APPELLEE:


SAM WALLACE, SR.             JOHN KNOX WALKUP
227 Second Ave., North       Attorney General & Reporter
Nashville, TN 37201
                             TIMOTHY F. BEHAN
                             Asst. Attorney General
                             John Sevier Bldg.
                             425 Fifth Ave., North
                             Nashville, TN  37243-0493

                             VICTOR S. JOHNSON, III
                             District Attorney General

                             JOHN ZIMMERMANN
                             Asst. District Attorney General
                             Washington Sq., Suite 500
                             222 Second Ave., North
                             Nashville, TN 37201-1649


OPINION FILED:_____



AFFIRMED


JOHN H. PEAY,
Judge

**O P I N I O N**

A jury found the defendant guilty of conspiracy to possess with the intent to deliver over seventy pounds of marijuana; two counts of possession with the intent to deliver one-half ounce to ten pounds of marijuana; and delivery of ten pounds, one gram to seventy pounds of marijuana. The trial court imposed an effective sentence of thirty-nine years incarceration, with a total fine of one hundred sixty thousand dollars ($160,000). On appeal, the defendant presents ten issues for review, most of which deal with the sufficiency of the convicting evidence or the propriety of the defendant's sentence. We affirm the defendant's convictions and sentence.

On August 23, 1994, members of the Metropolitan Police Department who were working with the Drug Enforcement Administration drug task force learned that four large, suspicious-looking packages were being sent via Federal Express from Phoenix, Arizona, to Nashville. The packages were each addressed to the name "Brian Orman" at the address of a property owned by a member of the defendant's family. The return address on the packages was phony. When the packages arrived in Nashville, a drug-sniffing dog detected narcotics.

Two police officers borrowed a Federal Express van and dressed as Federal Express employees in order to deliver the packages. When they drove to the address specified on the packages, they observed two males, Orman and the defendant's son, sitting in a pickup truck next to a house. Orman motioned for the Federal Express truck to stop. When it did, Orman signed for the packages and helped load them into the back of his truck. Orman and the defendant's son were then arrested and transported to the drug task force office. When the packages were opened, the police discovered over 180 pounds of compressed marijuana wrapped inside of the boxes. Orman and the defendant's son identified the defendant as the owner of the

2

marijuana. Orman had agreed to pick up the marijuana packages for the defendant in exchange for money because he was unemployed, behind on his truck payments, and needed to support his infant. These circumstances resulted in Count I, conspiracy to possess over seventy pounds of marijuana with the intent to deliver.

The drug task force had learned that a confidential informant had previously purchased marijuana from a man named Matthew Clay, who received the drugs from the defendant. On December 26, 1994, the drug task force gave the informant money to buy marijuana from Clay while surveilling Clay and the exchange. One officer watched Clay as he drove to the residence of 6010 Pennsylvania Avenue. The defendant's girlfriend lived at 6010 Pennsylvania Avenue, which is directly behind the defendant's house on California Avenue. After stopping at 6010 Pennsylvania Avenue, Clay then drove to a store parking lot in Ashland City, where he exchanged three-quarters of a pound of marijuana he had received from the defendant for money from the informant. These circumstances resulted in Count II, possession with the intent to deliver one-half ounce to ten pounds of marijuana.

The informant had made arrangements with Clay to purchase twelve pounds of marijuana. On December 28, 1994, the police followed Clay from his place of employment to 6010 Pennsylvania Avenue. They watched as the defendant left his second residence on East Stewart Lane and drove to meet Clay at 6010 Pennsylvania Avenue. They saw the defendant remove a plastic bag from his truck and give it to Clay. Clay then left the defendant's house and headed toward Ashland City, where he was to meet the informant. Before he arrived at the designated meeting place, however, he was arrested by the police. Fourteen pounds of marijuana were found in a plastic bag inside his van. Meanwhile, a search warrant was executed on the residence on East Stewart Lane, where thousands of dollars were seized, and the residence at 6010 Pennsylvania Avenue, where eight pounds of marijuana were seized. The marijuana seized at 6010

3

Pennsylvania Avenue resulted in Count III, possession with the intent to deliver one-half ounce to ten pounds of marijuana,[1] and the exchange of marijuana between the defendant and Clay resulted in Count IV, delivery of ten pounds, one gram to seventy pounds of marijuana.

Based on this evidence, a jury found the defendant guilty on all counts. The defendant was sentenced to fifteen years incarceration as a Range II multiple offender on Count I; six years incarceration as a career offender on Count II; six years incarceration as a career offender on Count III; and twelve years incarceration as a career offender on Count IV. All sentences are to be served consecutively to one another, for an effective sentence of thirty-nine years.[2] The trial court also imposed a one hundred thousand dollar ($100,000) fine for Count I; a five thousand dollar ($5000) fine for Count II; a five thousand dollar ($5000) fine for Count III; and a fifty thousand dollar ($50,000) fine for Count IV. The defendant now appeals.

The defendant first challenges his conviction on Count I, conspiracy to possess over seventy pounds of marijuana, claiming that the only proof to sustain his conviction is the uncorroborated testimony of an accomplice, Brian Orman. The defendant concedes that if Orman's testimony was corroborated, it would be sufficient to sustain his conviction for Count I.

---

[1]The indictment reflects that Count III is possession with intent to deliver ten pounds, one gram to seventy pounds marijuana. During trial, the State admitted that it needed to correct the indictment to reflect possession with the intent to deliver one-half ounce to ten pounds marijuana, as the proof showed that only eight pounds of marijuana was seized from 6010 Pennsylvania Avenue. Upon this concession, the trial court stated it would so charge the jury. The jury returned a verdict of "guilty as charged," even though a corrected indictment is absent from the record. Although the jury instructions are absent from the record, we are assuming that the jury was properly charged. We are also assuming that the judgment for Count III, which reflects the charge of possession with the intent to deliver one-half ounce to ten pounds marijuana, is correct, as it is consistent with the conversation the parties had on the record during trial.

[2]The judgment form for Count III incorrectly indicates that the sentence for Count III should be served consecutively to the sentence imposed in "Count III," rather than to one of the other counts. Considering that the judgment form for Count I expressly states the trial court's intention to sentence the defendant to an effective sentence of thirty-nine years, it is obvious from the record that the trial court intended the sentence in Count III to be consecutively served to the sentences imposed in Counts I, II, and IV. On remand, this scrivener's error should be corrected.

4

The rule is well settled in Tennessee that a defendant cannot be convicted on the uncorroborated testimony of an accomplice. Sherrill v. State, 204 Tenn. 427, 321 S.W.2d 811, 814 (1959). An accomplice is defined as "a person who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of a crime." Clapp v. State, 94 Tenn. 186, 30 S.W. 214, 216 (1895). To corroborate the testimony of an accomplice, "there should be some fact testified to, entirely independent of the accomplice's evidence, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it." Id. This corroboration must consist of some fact or circumstance which affects the identity of the defendant. Furthermore, the jury is to determine the degree of evidence necessary to corroborate the testimony of an accomplice, and it is sufficient "if there is some other evidence fairly tending to connect the defendant with the commission of the crime." Id. at 217.

Here, Orman was indicted for and pled guilty to conspiracy to possess over seventy pounds of marijuana, thus establishing that he was an accomplice to the defendant. However, contrary to the defendant's argument, the defendant was not convicted solely upon Orman's testimony. At trial, Orman testified that in return for payment, the defendant asked him to pick up some packages of marijuana that he was expecting to be delivered, that the packages of marijuana belonged to the defendant, and that he identified the defendant as the owner of the packages after he was arrested. Orman's testimony was amply corroborated. A police officer testified that after the packages were delivered and Orman and the defendant's son were arrested, the defendant's son also identified the defendant as the owner of the packages. There was also evidence that the defendant's "main man," a euphemism for "drug supplier," was a man named "Ricco" from Phoenix and that Ricco was a known drug supplier who operated out of Arizona. Moreover, the day before the packages were sent from Phoenix, the defendant withdrew three thousand dollars ($3000) from his bank account. This

5

evidence is sufficient corroboration of Orman's trial testimony, which is sufficient to support the defendant's conviction for Count I, conspiracy to possess over seventy pounds of marijuana.

The defendant also challenges his convictions for Counts II-IV, claiming that because the trial testimony of Matthew Clay, who the defendant contends was an accomplice, was not corroborated, Clay's testimony is insufficient to support his convictions. The defendant's argument is based on an incorrect premise, i.e., that Clay was the defendant's accomplice in the crimes charged in Counts II-IV. Clay could not have been considered an accomplice in Counts II-IV because he did not share a common intent with the defendant to commit the crimes charged; Clay was nothing more than the defendant's agent for delivery. Because he was not an accomplice in Counts II-IV, his trial testimony need not have been corroborated in order to be sufficient to support the defendant's convictions on those counts.

However, even if Clay could have been considered the defendant's accomplice, there was sufficient evidence in the record to corroborate Clay's trial testimony. Clay testified that he had picked up some marijuana from the defendant and had given it to another person (the confidential informant) on December 26. Clay also testified that on December 28, he was arrested for possessing fourteen pounds of marijuana, which he had received from the defendant earlier that day. A police officer testified that on December 26, he watched Clay stop by the residence at 6010 Pennsylvania Avenue and then proceed to a store parking lot in Ashland City, where he gave three-quarters of a pound of marijuana to the confidential informant. A police officer also testified that on December 28, Clay met with the defendant at 6010 Pennsylvania Avenue, and the defendant gave Clay a plastic bag. The plastic bag was later recovered

6

in Clay's van when he was arrested; the bag contained fourteen pounds of marijuana.[3] Even if Clay could be considered an accomplice to Counts II-IV, this evidence would be sufficient to corroborate Clay's testimony.

Next, the defendant appears to challenge his convictions on Counts III and IV on the grounds that these convictions, the first of which deals with possession of marijuana on December 26 and the second of which deals with delivery of marijuana on the same day, violate the Double Jeopardy Clause. We fail to understand how such an argument can be raised in good faith, however, since the record is clear that each count concerns a different quantity of confiscated marijuana: Count III arose from the marijuana seized at 6010 Pennsylvania Avenue pursuant to a search warrant, while Count IV concerned the plastic bag of marijuana that the defendant gave to Clay and that was found in Clay's van following his arrest. Because each count arose under different circumstances and is supported by different evidence, the defendant's double jeopardy challenge is wholly without merit.

The defendant also challenges his sentence, complaining that his sentence is excessive because he is not a violent offender and his convictions do not involve "serious hard drugs." However, the defendant failed to include a copy of the sentencing hearing transcript in the record, as is his burden as appellant to do. T.R.A.P. 24(b). Because the record is incomplete, we are precluded from reviewing the propriety of the sentence imposed; instead, "we must conclusively presume the judgment of the trial court was correct." State v. Matthews, 805 S.W.2d 776, 784 (Tenn. Crim. App. 1990).

_____

[3]While the police officer saw Clay accept the plastic bag from the defendant, he did not see him actually place it in his van because the angle at which he was observing the exchange obstructed his view. The defendant argues that without such evidence and without the police officer observing that it was contraband that was exchanged, the police officer's testimony cannot corroborate Clay's. We disagree. It is enough that the police officer testified that he saw Clay accept the plastic bag, that it was the only plastic bag found in Clay's van when he was arrested, and that the plastic bag contained fourteen pounds of marijuana.

At the end of his brief, the defendant makes two other abrupt assertions, i.e., that the trial court erred in allowing into evidence "conduct that was not included in the indictment," and that the trial court erred in allowing into evidence proof about the individual named "Ricco." However, the defendant failed to raise these issues in his motion for a new trial, thus waiving these issues on appeal. <u>See</u> T.R.A.P. 3(e); <u>State v. Clinton</u>, 754 S.W.2d 100, 103 (Tenn. Crim. App. 1988). The defendant has also waived these issues by failing to cite to the record or to any authority. <u>See</u> Rules of the Court of Criminal Appeals of Tennessee 10(b).

Finding no merit in the defendant's arguments, we affirm his convictions and sentence.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
THOMAS T. WOODALL, Judge


_____
L. TERRY LAFFERTY, Special Judge