# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MARCH SESSION, 1999

FILED

April 21, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9807-CC-00293** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **MARSHALL COUNTY** |
| **VS.** | ) | |
| | ) | **HON. CHARLES LEE,** |
| **ROBERT P. THURMAN,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Burglary, Theft) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF MARSHALL COUNTY

FOR THE APPELLANT:

N. ANDY MYRICK, JR.
116 West Market Street
Fayetteville, TN 37334

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KIM R. HELPER
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

MIKE McCOWEN
District Attorney General

WEAKLEY E. BARNARD
Assistant District Attorney General
P.O. Box 45
Fayetteville, TN 37334

OPINION FILED _____

AFFIRMED AND REMANDED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Robert P. Thurman, appeals as of right his convictions and sentences for burglary and theft of property valued less than $500. On April 17, 1998, a jury convicted Defendant of burglary and misdemeanor theft. Following a sentencing hearing, the trial judge sentenced Defendant to eleven months, twenty-nine days for theft and twelve years for burglary, to be served concurrently as a career offender.

In this appeal, Defendant contests (1) the sufficiency of the evidence to support his convictions, (2) the admissibility of his pretrial statement to police, (3) the admissibility of testimony impeaching his pretrial statement to police, and (4) his status as a career offender for the felony burglary. We find no error by the trial court, and we affirm both Defendant's convictions and his sentences.

## I. SUFFICIENCY OF THE EVIDENCE

Tennessee Rule of Appellate Procedure 13(e) prescribes that "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329,

331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

In this case, the proof was sufficient to permit the jury to find Defendant guilty of theft and burglary. According to testimony at trial, Deputy Sheriff Steve Holton of the Marshall County Sheriff's Department was patrolling his designated area at approximately 7:00 a.m. on January 1, 1998, when he observed a single car in the parking lot of the Bethlehem Baptist Church. Deputy Holton noticed that the vehicle was backed up to the church building, that the driver's-side door was open, that the trunk was open, and that a person was sitting in the passenger seat. Holton also noted that no church services were scheduled because it was not Sunday. His suspicions raised, he entered the parking lot to investigate further.

Deputy Holton questioned the passenger of the vehicle and identified him as Paul Pratt. Pratt stated that he was waiting on his friend, Robert Thurman, who was relieving himself in the wooded area immediately behind the parking lot.

Holton observed a microwave oven in the open trunk of the vehicle; and the deputy then requested back-up law enforcement and waited with Pratt to ensure his continued presence. Meanwhile, Pratt gave Holton the vehicle paperwork from the glove compartment. These documents, including a bill of sale/security agreement, odometer disclosure statement, buyer's guide/warranty, and automobile insurance receipt, all indicated that Robert Thurman owned the car.

In addition, Deputy Holton testified that Pratt did not possess the ignition key for the car, and deputies failed to locate an ignition key in the car, on the ground, or inside the premises of the church. Holton stated that upon inspection of the church, he discovered several broken windows, at least one of which was large enough for a person and a microwave to slide through. However, Holton opined that the hole was not situated so that a person could carry a microwave through the window alone or place a microwave outside the window without causing damage to it.

Marshall County Deputy Phil Klarer testified that, upon arriving at the scene, he observed tennis-shoe prints underneath the deadbolt lock on a door to the church. In Klarer's opinion, the door had been kicked several times, creating multiple overlapping prints of the same shoe pattern. He testified that he inspected Paul Pratt's shoe to determine if Pratt's shoe matched the print. Klarer concluded that Pratt's shoe did not make the particular marks on the door. Klarer also verified that deputies conducted a fruitless search for the ignition key to Defendant's vehicle.

Paul Pratt, the accomplice in this case, testified for the State following his plea of guilty to charges arising from these facts. Pratt stated that he and Defendant attended a party on New Year's Eve, left the party, and drove to the Bethlehem Baptist Church. According to Pratt, Defendant drove into the parking lot, exited the car, and walked around to the rear of the church. Defendant then called out to Pratt through a broken window to "come and give him a hand." Defendant handed the microwave to Pratt through the window, and Pratt placed it in the trunk of the car. Pratt then sat down in the passenger seat of the car while Defendant went to the woods to relieve himself. At that time, Deputy Horton arrived on the scene.

Detective Samuel Bragg of the Marshall County Sheriff's Department testified that he conducted a taped interview with Defendant after reading Defendant his Miranda rights. In this interview, Defendant stated that he arrived home on January 1, 1998 by 3:00 a.m. and went to sleep. He told Bragg that the next morning he and his mother had breakfast at Shoney's at approximately 8:00 and that they then visited his grandmother at a nursing home in Nashville. He explained in this interview that he had loaned his car to Pratt after Pratt drove him home from the New Year's Eve party.

Detective Bragg testified that at the conclusion of his interview with Defendant, he immediately telephoned Defendant's mother to verify the alibi. The State entered into evidence a tape recording of this conversation, in which Defendant's mother told the detective that she had not eaten breakfast at Shoney's and that she had worked all day on January 1. Bragg testified at trial

that when he confronted Defendant with this information from Defendant's mother and asked him why he lied to police, Defendant responded that he did not know.

Tennessee Code Annotated § 39-14-103 states, "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Furthermore, "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building and commits or attempts to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(3). We find the evidence sufficient to support convictions for theft and burglary.

Defendant contends that his convictions were impermissibly supported by the uncorroborated testimony of an accomplice. A defendant cannot be convicted on the uncorroborated testimony of an accomplice. Sherill v. State, 321 S.W.2d 811, 814 (Tenn. 1959). This Court instructed in State v. Caldwell, 977 S.W.2d 110 (Tenn. Crim. App. 1997),

> To corroborate the testimony of an accomplice, "there should be some fact testified to, entirely independent of the accomplice's evidence, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it." . . . This corroboration must consist of some fact or circumstance which affects the identity of the defendant.
> Such corroborative evidence "may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction" so long as it "fairly and legitimately tends to connect the defendant with the commission of the crime charged."

Id. at 115-16 (quoting Clapp v. State, 30 S.W. 214, 216 (Tenn. 1895), and State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992), respectively).

In this case, we find that the accomplice testimony by Paul Pratt was more than sufficiently corroborated by law enforcement testimony that upon investigating the scene of the burglary, deputies discovered a car registered to Defendant, with the driver's-side door open and Pratt in the passenger seat, with a microwave oven in the open trunk. Moreover, officers searched in vain the person of Pratt, the vehicle, the grounds of the church, and the interior of the church for ignition keys to Defendant's car, leading to the inference that Defendant possessed the keys. Finally, officers excluded Pratt's shoes as the shoes which marked prints on the church door. This issue lacks merit.

## II. ADMISSIBILITY OF PRETRIAL STATEMENT

In his second issue, Defendant contests the admissibility of his statement to law enforcement following his arrest. He does not allege a constitutional violation, but only an evidentiary violation—that the statement was not relevant to any fact of consequence in the trial. In support, Defendant argues that the statement, in which he told Detective Bragg that he had been with his mother at Shoney's and a nursing home in Nashville on the day of the theft and burglary, was not relevant to any issue at trial because he had decided not to present an alibi defense.

Defendant asserts that State v. Taylor, No. 02C01-9501-CR-00029, 1996 WL 580997 (Tenn. Crim. App., Jackson, Oct. 10, 1996), supports the exclusion of this evidence. Specifically, he quotes Taylor for the proposition that "nothing in [Tennessee Rule of Criminal Procedure 12.1(d)] requires the defendant to rely on an alibi, nor is there any provision preventing him from abandoning an alibi

defense. Therefore the decision of whether to provide an alibi is left entirely to the discretion of the defendant." Id. at *9.

However, Taylor does not prevent or caution against the introduction of Defendant's statement in the case at bar. In Taylor, this Court rejected the defendant's claim that the rule requiring disclosure of an alibi defense caused the defendant's silence to be interpreted as an affirmative statement that no alibi existed, in violation of his right against self-incrimination. The Court's words in Taylor cannot be construed to mean that Defendant's affirmative statement to police regarding his whereabouts at the time of the crime is irrelevant to a determination of his guilt. Defendant's explanation of his whereabouts at the time of the crime, although certainly prejudicial to the defense, constitutes circumstantial evidence quite relevant to the jury's determination. This issue lacks merit.

## III. IMPEACHMENT TESTIMONY

Defendant next argues that the trial court improperly admitted impeachment testimony offered by Detective Bragg to show that Defendant's mother had not supported Defendant's alibi, and Defendant's own statement that he did not know why he lied to police. Defendant challenges the testimony as evidence of a prior bad act under Tennessee Rule of Evidence 404.

The State responds that while evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait, such evidence may admissible for other purposes. Tenn. R. Evid. 404(b). In this case, the State argues that the

evidence was not used to show that because Defendant was a liar, he was likely also a thief and burglar. Rather, the evidence was used to show that at the time of the crime under investigation, Defendant was not at the place that he originally claimed to be. We agree with the State's position, and we affirm the admission both of Defendant's original statements concerning his whereabouts and of evidence tending to show that those statements were untrue.

## IV. CAREER OFFENDER STATUS

Defendant challenges the trial court's finding that he is a career offender for sentencing purposes. He argues that the trial court erred by failing to find his nine prior felony convictions a "single course of conduct" within the meaning of Tennessee Code Annotated § 40-35-108(b)(4). Section 40-35-108 reads:

> Convictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions . . . .

Tenn. Code Ann. § 40-35-108(b)(4).

Defendant's nine felony convictions arose from his failure to disclose his employment while receiving unemployment compensation benefits. Although Defendant claims that procuring employment without reporting the same to the Department of Employment Security constituted a single course of action, the record reflects that Defendant's convictions arose under Tennessee Code Annotated § 50-7-713, when he cashed unemployment benefit checks from the Department of Employment Security on nine separate occasions without reporting his employment. Exhibit 1 to Defendant's sentencing hearing consists of the nine indicted counts for which Defendant was convicted. The exhibit

reflects that these offenses did not occur within twenty-four hours, but rather spanned three months.  This issue lacks merit.

The judgment of the trial court is affirmed.[1]

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOE G. RILEY, JUDGE

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[1] The judgment entered for the theft conviction contains an apparent error.  The judgment reflects a conviction for a Class D felony with a sentence of eleven months and twenty-nine days in the county jail.  The record reflects that the conviction was for Class A misdemeanor theft.