# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
September 28, 2010 Session

# STATE OF TENNESSEE v. JEREME DANNUEL LITTLE

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 253374     Rebecca J. Stern, Judge**

---

**No. E2009-01796-CCA-R3-CD - Filed January 3, 2012**

---

Based on the cumulative effect of the errors committed in this case, I would reverse the Defendant-Appellant's convictions and remand for a new trial. Accordingly, for the reasons outlined below, I respectfully dissent.

In State v. Hester, the Tennessee Supreme Court defined the doctrine of cumulative error:

> The cumulative error doctrine is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial.

State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010) (citations omitted). The Hester court also found that United States v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993), provided helpful insight regarding the cumulative error doctrine. Hester, 324 S.W.3d at 77. In Sepulveda, the United States Court of Appeals for the First Circuit provided guidance for appellate courts when considering whether the aggregated errors at trial deprived a defendant of a fair trial:

> Of necessity, claims under the cumulative error doctrine are sui generis. A reviewing tribunal must consider each such claim against the background of the case as a whole, paying particular weight to factors such as the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the [trial] court dealt with the errors as they arose (including the efficacy–or lack of efficacy–of any remedial efforts); and the strength of the [State's] case. See, e.g., [U.S. v.] Mejia-Lozano, 829 F.2d [268,] 274 n.4 [(1st Cir. 1987)]. The run of the trial may also be important; a handful of miscues, in combination, may often pack a greater punch in a short

trial than in a much longer trial.

Sepulveda, 15 F.3d at 1196.

As an initial matter, the paucity of proof in this case must be addressed. It is significant that the aggravated robbery, which precipitated the especially aggravated kidnapping charges, lay dormant for nearly seven years because neither victim could identify the perpetrators. Only after law enforcement contacted Grayson, who was incarcerated on unrelated aggravated robberies and admittedly anticipating a sentence reduction in exchange for his cooperation, did Grayson advise law enforcement that he and the Defendant-Appellant had committed the 1998 aggravated robbery. At this point, Grayson further advised law enforcement that the Defendant-Appellant kidnapped and tortured Grayson because Grayson "ran out" on the Defendant-Appellant during the aggravated robbery.

For reasons not borne out by the record, law enforcement then contacted Kelvin Ellison, the only other purported witness to the alleged kidnapping. Ellison was likewise incarcerated at the time he was contacted by law enforcement and anticipated a third sentence reduction in exchange for his cooperation. At the beginning of their conversation, which was recorded, law enforcement told Ellison that they were investigating a 1998 robbery, that the Defendant-Appellant had Grayson tied to a chair, and that they needed someone "to corroborate what this person told [them] happened to him." Prior to being informed about the forced consumption of dog feces and in response to an agent telling Ellison where Grayson had been tied up, Ellison told the authorities, "Yeah. And they were beating him, had the dog (indiscernible) stuff." Although the above statement was disputed at trial, later in the taped conversation, a detective stated, "O-kay. I'm going to go ahead and mention this since you haven't mentioned it. I think it's something that you would have remembered if you'd seen it, but the report that we got is that [the Defendant-Appellant] was making [Grayson] eat dog feces." Significantly, Ellison testified that he did not see the Defendant-Appellant force Grayson to consume dog feces or hit Grayson, and that Ellison left the scene before observing any material details of the offense.

It is against this backdrop that the trial court admitted the accomplice testimony regarding the aggravated robbery and refused to provide an instruction consistent with the accomplice corroboration rule. As suggested by the majority, the aggravated robbery evidence very well may have been admissible in a severed trial under Tenn. R. Evid. 404(b), regardless of the trial court's refusal to instruct the jury. However, none of the procedural safeguards required as a predicate to the introduction of other bad acts were provided in this case. See State v. James, 81 S.W.3d 751, 758 (Tenn. 2002) ("[T]o minimize the risk of unfair prejudice accompanying the introduction of other-acts evidence, Rule of Evidence 404(b) establishes several protective procedures that must be followed before other-acts

-2-

evidence is admissible.") (citing Neil P. Cohen et al., <u>Tennessee Law of Evidence</u> § 4.04[7][b], at 4–76; <u>State v. DuBose</u>, 953 S.W.2d 649, 652 (Tenn. 1997)). Here, the evidence was not subjected to a hearing to determine if it satisfied the clear and convincing standard of proof demanded under Rule 404(b). Additionally, the jury was not instructed as to any purpose for which the other act evidence was introduced.

The trial court's error in this regard was further compounded when it allowed the State to use the same aggravated robbery evidence, for which the Defendant-Appellant had been acquitted pursuant to Rule 29, during closing argument and refused to allow the Defendant-Appellant to rebut the same. The record shows that the prosecutor relied substantially upon the aggravated robbery conduct in his closing argument and began by stating, "we're talking about . . . just the kidnapping charge." The next four pages of the transcript were dedicated to recounting the events of the aggravated robbery. He posited, "Maybe you guys could come up, imagine, dream up, conceive of some reason why someone would confess to a robbery hoping to get a break on it. There's not one. [Grayson] told you the truth" and continued to weave the aggravated robbery conduct throughout his closing argument. Although the trial court advised the jury that the disposition of the aggravated robbery indictment was not their concern, the jury, more likely than not, found it difficult to ignore other alleged criminal conduct by the Defendant-Appellant that was admitted into evidence without any procedural or substantive safeguards. Here, after the judgment of acquittal was granted regarding the aggravated robberies, neither party should have been permitted to rely upon the acquitted conduct in closing argument to the jury. <u>State v. Turner</u>, --- S.W.3d ----, No. W2007-00891-SC-R11-CD, 2011 WL 4824446 (Tenn. Oct. 12, 2011) (prohibiting use of prior acquittal during trial); <u>Sherrill v. State</u>, 204 Tenn. 427, 437, 321 S.W.2d 811, 816 (1959) (noting the pre-rule practice of requiring the district attorney to nolle the case after the judge declares mistrial).

"The line between harmless and prejudicial error is in direct proportion to the degree of the margin by which the proof exceeds the standard required to convict beyond a reasonable doubt." <u>State v. Carter</u>, 714 S.W.2d 241, 248 (Tenn. 1986). I have already commented on the dearth of proof supporting the Defendant-Appellant's conviction. While legally sufficient, it does not exceed the required margin to convict. In this case, the trial court erred by refusing to provide an instruction to the jury consistent with the accomplice corroboration rule and by allowing the State to argue the aggravated robbery conduct, which resulted in a Rule 29 acquittal, in its closing argument. Consequently, the Defendant-Appellant's conviction was based in part on the testimony of an uncorroborated accomplice witness, unfairly prejudicial prior bad acts, and improper jury instructions.

Based upon the above analysis and authority, I would conclude that the aggregated errors in this case more likely than not affected the outcome of the trial, <u>State v. Rodriguez</u>,

254 S.W.3d 361, 372 (Tenn. 2008), and deprived the Defendant-Appellant of a fair trial. Accordingly, I would reverse the Defendant-Appellant's conviction and remand for a new trial.

_____
CAMILLE R. MCMULLEN, JUDGE