IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 12, 2011

## STATE OF TENNESSEE v. JOSHUA BEADLE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-00729     Lee V. Coffee, Judge**

**No. W2010-01101-CCA-R3-CD  - Filed June 22, 2012**

A Shelby County Grand Jury returned an indictment against Defendant, Joshua Beadle, and Co-Defendant, Lezuntra Knox, charging them with burglary of a building.  Following a jury trial, Defendant was convicted of the offense and received a sentence of four years in the county workhouse.  Defendant Knox was tried separately.  On appeal, Defendant argues that the evidence was insufficient to support his conviction.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, PJ., and NORMA MCGEE OGLE, J., joined.

James E. Thomas, Memphis, Tennessee (on appeal); and Joshua Beadle, *Pro Se*, (at trial), for the appellant, Joshua Beadle.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; Robert Carter, Assistant District Attorney General; and Kate Emdands, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Background

In September of 2005, Mujahad Addellatif was working as the manager of New York Fashion, a store owned by his cousin, which is located at 690 Jackson Avenue in Memphis. At approximately 4:00 a.m. on September 18, 2005, Mr. Addellatif received a call that there

was an alarm at the store. He drove to the store, and his cousin and several police officers were there when he arrived. Police had the front of the store secured, and he and his cousin opened the security gate for them. Mr. Addellatif and his cousin went inside the store with police and found shoes all over the floor, and pants were off the racks. He noticed that several items were missing. It appeared that someone had entered the store through the roof. Mr. Addellatif testified that the store had ten surveillance cameras and that he made copies of the video surveillance recordings from the time period of the break-in and gave them to Sergeant Bradley Holland. Sergeant Holland also brought Mr. Addellatif a pair of white Fila shoes to look at. Mr. Addellatif was able to identify the shoes as a pair taken during the burglary because the box had been left behind, and he was able to match the size and serial number of the shoes to the box.

Officer Kevin Johnson of the Memphis Police Department testified that he was initially dispatched to an alarm call around the area of New York Fashion at approximately 3:00 a.m. He and others on the scene checked the area and noticed that the exterior metal gate of the business was intact. He walked around the store but did not know whether anyone was inside. Officer Johnson later received a second call to the business. He and another officer pulled up, and he observed five or six people behind the business who ran in different directions. Two individuals were eventually taken into custody. One of them had some sea shells in his hair. Officer Johnson then met with Mr. Addellatif and the store owner and took a report.

Sergeant Bradley Holland of the Robbery Bureau investigated the burglary. He spoke with the store owner and the manager, and they gave him information and an inventory of the missing items. He also viewed the point of entry for the burglary and obtained a CD of the security video recording. Sergeant Holland viewed the video and saw an individual with sea shells in his hair. The person was identified as Co-Defendant Lezuntra Knox, who had been taken into custody at the scene. He noted that Co-Defendant Knox had sea shells braided into his hair at the time of his arrest. Sergeant Holland could not identify anyone else in the video. He testified that Carl Campbell was also taken into custody shortly after the burglary, but he was later released due to lack of evidence.

Sergeant Holland testified that he received an anonymous tip which led him to Defendant as a suspect. He then located Defendant, who was in jail on an unrelated matter. He noted that he was not in jail at the time of the burglary. Sergeant Holland checked Defendant out of jail, and as they were walking to the burglary bureau office, Sergeant Holland noticed that Defendant was wearing what appeared to be a new pair of Fila tennis shoes. He remembered that some Fila shoes were taken during the burglary. Sergeant Holland took the shoes to New York Fashion and showed them to the owner and the

manager. They matched the brand and serial number to a box that they believed the shoes were taken from. He tore off the end of the box and placed it with the shoes.

Sergeant Holland testified that Defendant signed a waiver of rights and gave a statement. He denied any involvement in the burglary and told Detective Holland that he purchased the shoes at the City Gear store located in the Raleigh Springs Mall. Defendant said that the receipt for the shoes was at "671 Mcdavit" in a "shoe box under Willey's bed." Defendant admitted that he was in the area of New York Fashion at the time of the burglary, but claimed that he was searching a neighbor's yard when police arrived because he heard his neighbor screaming that someone was trying to get her daughter. He denied knowing Co-Defendant Knox or Carl Campbell. Sergeant Holland called Defendant's residence and spoke with his mother who was unable to verify the story about a receipt. He then took the tennis shoes to City Gear and learned that they did not sell that type of shoe.

Deborah Caruthers, Defendant's aunt, testified that Defendant was living with her at "671 Mcdavit" at the time of the burglary. She said that police contacted her about a shoe box and a receipt, but she did not know anything about them.

Co-Defendant Lezuntra Knox testified that he and others broke into New York Fashion around 3:00 to 4:00 a.m. on September 18, 2005. At the time, he wore his hair in dread locks with seashells in them. Co-Defendant Knox testified that he knew Defendant from the neighborhood, and he saw him inside New York Fashion at the time of the burglary. He admitted that he did not initially tell police that Defendant was involved in the burglary.

## II. Analysis

Defendant challenges the sufficiency of the evidence and argues that Co-Defendant Lezuntra Knox's testimony as an accomplice was not sufficiently corroborated and that the State failed to prove that he entered the building. When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle,* 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id.* Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the

evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

It is well-settled that "a conviction may not be based solely upon the uncorroborated testimony of an accomplice." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Regarding the rule of corroboration, our supreme court has stated:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

*Sherrill v. State,* 204 Tenn. 427, 321 S.W.2d 811, 815 (1959). "In short, the evidence must confirm in some manner that (a) a crime has been committed and (b) the accused committed the crime." *State v. Griffis,* 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997).

Tennessee Code Annotated section 39-14-402(a)(1) (Supp. 1996) provides that "[a] person commits burglary who, without the effective consent of the property owner ... [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault."

Viewed in the light most favorable to the State, in this case, Lezuntra Knox testified that he and several others burglarized New York Fashion on September 18, 2005. He identified Defendant as one of the individuals in the store at the time. Co-Defendant Knox's testimony was corroborated by evidence that Defendant was wearing a pair of Fila tennis shoes that were taken at the time of the burglary when Sergeant Holland interviewed him. Mr. Addellatif identified the shoes by matching the serial numbers on the shoes to an empty box left in the store after the burglary. Although Defendant told Sergeant Holland that he purchased the shoes at City Gear and had a receipt for them, Detective Holland was unable to locate the receipt. He also learned that City Gear did not sell Fila tennis shoes. Defendant also admitted that he was in the area of the store at the time of the burglary. There is sufficient independent evidence to corroborate the testimony of the accomplice.

Based on our review of the evidence, we conclude that the evidence was sufficient to support beyond a reasonable doubt Defendant's conviction for burglary.  Defendant is not entitled to relief in this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE