IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 6, 2007

## STATE OF TENNESSEE v. LATARSHA R. WHEELER

**Appeal from the Criminal Court for Shelby County**
**No. 05-00736    Mark Ward, Judge**

---

**No. W2006-01001-CCA-R3-CD  - Filed June 18, 2007**

---

The defendant, Latarsha R. Wheeler, was convicted of theft of property valued at $1,000 or more, but less than $10,000, a Class D felony, for money stolen from her employer, Back Yard Burgers. See T.C.A. § 39-14-105(3).  The defendant was sentenced as a Range I offender to three years with forty days of periodic confinement in the workhouse coupled with probation.  In this appeal, we consider her claims of error due to insufficient corroboration of accomplice testimony, lack of a jury charge on facilitation, denial of judicial diversion, and error in imposing the amount of restitution. We hold that the trial court did not err and affirm its judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Michael E. Scholl, Memphis, Tennessee (on appeal), and Claiborne Ferguson, Memphis, Tennessee (at trial), for the appellant, Latarsha R. Wheeler.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Pamela Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant's conviction arises from her participation with another employee and an unidentified individual in a staged robbery of a Back Yard Burgers restaurant.  The defendant was charged with Ashley L. Mitchell, although their cases were severed and Ms. Mitchell testified for the state at the defendant's trial.  Ms. Mitchell was also charged with filing a false police report.

Ashley Mitchell testified that she and the defendant were both shift managers for Back Yard Burgers.  She said that in April 2004, the defendant asked Mitchell to meet her at a Kmart store. She said that when she arrived, the defendant asked her if she would like to make some extra money and

revealed a plan in which Mitchell would let a man into the restaurant to commit a robbery. Mitchell testified that the defendant said the plan would need to be executed on a day when the defendant opened the store and Mitchell closed so that the deposits from the previous night and that morning would not be made. Mitchell said she expressed her agreement on the condition that no one get hurt during the robbery. Mitchell said the plan was not discussed again until a Friday in May when she went to the restaurant's drive-through window to get her paycheck. She said the defendant, who was the manager on duty with authority to retrieve the paycheck from the safe, handed her paycheck to her, nodded, and said, "Sunday." Mitchell said that nothing else was said but that she knew the defendant was communicating to her that the robbery would take place on Sunday.

Mitchell testified that she worked as scheduled that Sunday evening starting at 5:00 p.m. She said the defendant had worked earlier that day but was not at the restaurant when she began her shift. She said the deposit from Saturday night and Sunday morning were in the bottom part of the safe, which was unusual. She explained that the top part of the safe had a slot for periodic drops of cash to be made and that it had a timing mechanism which allowed it to be opened during a specified period of time in the morning. She said the night deposit was normally placed in the top of the safe. Mitchell narrated a surveillance tape of the purported robbery and identified herself looking for the robber at the doors and taking money from the cash registers and the safe. She identified the robber in the tape but said she did not know who he was. She said there were three deposit bags, one each for Saturday night, Sunday morning, and Sunday night. She said that after the robber ran from the store, she screamed for another employee, who had been in the restroom, and that he called the authorities. She said she told the police that the store had been robbed when an armed, "bright skinned" man with light eyes who was about five feet, four inches tall forced his way into the restaurant.

Mitchell said that she did not speak to the defendant after the robbery. She said that on Tuesday her district manager summoned her to the restaurant for a meeting, at which time the district manager and two detectives confronted her with information they had learned from the surveillance tape. She said that she was arrested and that she eventually gave a statement admitting the defendant's and her involvement in the crime. She said that her case had been severed from the defendant's and that she planned to plead guilty. She denied that she had been promised anything in exchange for her testimony against the defendant.

William Boller testified he was the director of operations for Back Yard Burgers. He said the shift leaders and higher managers had the responsibility for making the two daily deposits. He said the company used time lock safes and that a top portion of the safe was accessible for only one hour in the morning and one hour in the afternoon. He said that this compartment had a slot for employees to make periodic money drops and that the person in charge of the shift then deposited the money. He identified the records from the store at which the defendant worked in May 2004. He said that the records reflected that deposits had been prepared for $887 and $1,514.55 but that these deposits were never made at the bank. He said there should have been a third deposit but that no amount was recorded on the paperwork.

Sergeant Steven Wilkerson of the Memphis Police Department's Robbery Bureau testified that Ashley Mitchell admitted to him that she had falsely reported a robbery. He said he interviewed the defendant, who denied any knowledge of the robbery. He said the defendant told him that she did not have any responsibility for making bank deposits for Back Yard Burgers.

Renny Osburn testified that he was the general manager for Back Yard Burgers in May 2004 and that the defendant and Ashley Mitchell were shift leaders at the restaurant. He said he had worked until around 4:00 p.m. on Saturday, May 29, 2004, and that he had given the defendant the responsibility for the safe around 10:00 a.m. when she reported to work. He said he had to leave early and delegated to the defendant the responsibility for making a deposit of funds from Friday night.

Osburn testified that he returned to the restaurant the following day for about an hour and that he noticed there were two deposits in the bottom of the safe that should not have been there. He said he took the deposits out of the safe and put them in a chair. He said he asked the defendant why they had not been taken to the bank and she replied that she was "taking them right now." He said the defendant should have gone to the bank with deposits of the funds from Friday evening and from Saturday morning. He said she also should have taken the money from the Saturday evening drops from the top of the safe and prepared a deposit. He said that later in the day, another deposit would have been formulated from the funds cleared from the registers around 3:00 to 5:00 p.m. He said the assistant manager, Joyce Holland, had the responsibility to make the deposit of Saturday evening's funds on Sunday morning.

The defendant did not offer proof. The jury found the defendant guilty of theft of property valued over $1,000. The trial court later denied the defendant's request for judicial diversion and imposed a mid-range sentence of three years. He ordered the defendant to serve forty days on weekends in the workhouse and ordered the balance of the sentence to be served on probation. As conditions of the sentence he ordered that the defendant notify her current employer of her conviction, that she maintain full-time employment, and that she pay restitution of $4,519.03 to Back Yard Burgers.

**I**

The first issue the defendant raises on appeal is a challenge to the sufficiency of the convicting evidence. Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The defendant's specific claim is that the evidence does not sufficiently corroborate the testimony of her accomplice, Ashley Mitchell. A conviction cannot be based solely upon the uncorroborated testimony of an accomplice. State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001); Sherrill v. State, 204 Tenn. 427, 433, 321 S.W.2d 811, 814 (1959). Other evidence must exist, entirely independent from the accomplice's testimony, which establishes the defendant's identity and leads to the inference, in and of itself, that the defendant is implicated in the commission of the crime. Bane, 57 S.W.3d at 419. The evidence may be direct or entirely circumstantial, and it need not be adequate, taken by itself, to support a conviction; "it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged." Id. Moreover, the corroborative evidence need not extend to every part of the accomplice's testimony. Id.

In the present case, the state proved through Ashley Mitchell's testimony that the defendant orchestrated a robbery of Back Yard Burgers. Mitchell admitted her guilt in the scheme, and there is no question she was an accomplice. Mitchell's testimony that the defendant was involved in the crime was corroborated by Renny Osburn's testimony that the defendant should have made the deposits, that she said she was about to do so, but that the deposits were not made. Mitchell testified that the defendant's plan called for the defendant to be the opening shift leader and Mitchell to be the closing shift leader in order that multiple deposits would be taken in the robbery, and the robbery took place when this arrangement occurred. Osburn testified that the defendant worked the morning on the day of the crime and that Mitchell worked that evening. Considering the evidence in the light most favorable to the state, we hold that it was sufficient to prove the defendant's guilt beyond a reasonable doubt and that Ashley Mitchell's testimony was sufficiently corroborated.

## II

The defendant's next argument is that the trial court erroneously failed to instruct the jury on facilitation as a lesser included offense of theft. At the trial, the defendant requested a facilitation instruction, but the trial court found that the facts did not support it. The state argues on appeal that the trial court's finding was proper.

"[F]acilitation is a separate and distinct theory of liability from that of a principal offender or someone who is criminally responsible for the conduct of another." State v. Locke, 90 S.W.3d 663, 672 (Tenn. 2002). Facilitation can be found if a person, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), . . . knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a).

In State v. Burns, 6 S.W.3d 453 (Tenn. 1999), our supreme court adopted a modified version of the Model Penal Code in order to determine what constitutes a lesser included offense:

An offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

> (1) a different mental state indicating a lesser kind of culpability; and/or

> (2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466-67.

If an offense is a lesser included offense, then the trial court must conduct the following two-step analysis in order to determine if the lesser included offense instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469.

If a trial court improperly omits a lesser included offense instruction, then constitutional harmless error analysis applies, and this court must determine if the error did not affect the outcome of the trial beyond a reasonable doubt. State v. Ely, 48 S.W.3d 710, 725 (Tenn. 2001). "In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002).

In the present case, facilitation is a lesser included offense under Burns (c)(1). See Burns, 6 S.W.3d at 466-67. The question is whether the trial court properly determined that the instruction was not supported by the facts of the case.

In order for the defendant to have been found guilty of facilitation of theft, the state would have had to prove that the defendant, although not acting with the intent to promote the theft or benefit in the proceeds or results, provided substantial assistance to Mitchell and the unidentified man, knowing of their intent to commit the theft. Viewing the evidence in the light most favorable to the existence of the lesser included offense, we conclude that no evidence showed that the defendant was guilty of facilitation, as opposed to either the greater offense or no offense at all. The state's evidence was that the defendant was guilty of theft, and although the defense did not present proof, the defense attempted to discredit Ashley Mitchell's credibility through its cross-examination of the witnesses. If the jury chose to reject Mitchell's testimony, the evidence of the defendant's failure to make bank deposits would remain. However, without Mitchell's testifying against the defendant, the jury might speculate whether the defendant had a criminal motive in failing to make the deposits, but no evidence exists to support that conjecture. Thus, there is no evidence which reasonable minds could accept of facilitation. We conclude that the trial court did not err in declining to give a facilitation instruction.

## III

The defendant argues that the trial court erred when it denied her request for judicial diversion. The defendant claims that the trial court failed to consider the defendant's lack of a criminal record and the fact that she had been employed without incident for over a year and a half since the conviction offense occurred. The state responds that the trial court did not abuse its discretion in denying diversion.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See T.C.A. § 40-35-313(a)(1)(B). Judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. Id. When the probationary period expires, if the defendant has completed probation successfully, then the trial court will discharge the defendant and dismiss the prosecution with no adjudication of guilt. See id. at (a)(2). The defendant may then apply to have all records of the proceedings expunged from the official records. See id. at (b). A person granted

judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See id. at (a)(1)(A).

Judicial diversion is not a sentencing alternative for a defendant convicted of an offense. See T.C.A. § 40-35-104(c). Therefore, there is no presumption that a defendant is a favorable candidate for judicial diversion. See State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). When a defendant challenges the manner of serving a sentence, this court conducts a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). However, when the accused challenges the trial court's denial of a request for judicial diversion, a different standard of appellate review applies. Because the decision to grant judicial diversion lies within the sound discretion of the trial court, this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). An abuse of discretion exists if the record contains no substantial evidence to support the denial. State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983); Bonestel, 871 S.W.2d at 167.

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); Bonestel, 871 S.W.2d at 168. In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." Electroplating, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." Parker, 932 S.W.2d at 958-59. If the trial court "based its determination on only some of the factors, it must explain why these factors outweigh the others." Electroplating, 990 S.W.2d at 229.

In the present case, the record of the sentencing hearing reflects that the trial court weighed the various sentencing considerations and memorialized its findings on the record. With respect to judicial diversion, the court announced that it had considered the relevant factors. In denying diversion, it relied on the need not to depreciate the seriousness of the offense and send the wrong message to the community, the difficulty in assessing the defendant's remorse and rehabilitation from the evidence presented, and the best interests of the public and the defendant.

Upon review of the record, we hold that the trial court did not abuse its discretion. The trial court considered all of the relevant factors and found some more compelling than others. Unfortunately for the defendant, the factors that the court found compelling were those which weighed against a grant of diversion. The record reflects that the court considered and commented upon all of the factors, including those which the defendant claims the court failed to consider. We will not disturb the trial court's denial of diversion.

**IV**

Finally, the defendant claims that the evidence did not establish that the proper amount for the trial court's restitution order was $4,519.00.  The record reflects, however, that the state and the defendant agreed at the sentencing hearing that the amount that was not recovered from the robbery was $4,519.03.  The trial evidence was that deposits of $887 and $1,514.55 were taken, along with a third deposit of an unknown amount.  Given the defendant's lack of objection to the $4,519 amount, the state had no reason to offer additional evidence to corroborate the amount upon which the parties agreed.  The defendant has waived any complaint by her lack of objection to and involvement in the trial court's choice of the restitution amount.  See Tenn. R. App. P. 36(a).

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE