# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 5, 2014 Session

## STATE OF TENNESSEE v. CHARLES McCLAIN, LAVINO HORNE, and LETERPA MOSLEY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-00509      James C. Beasley, Jr., Judge**

_____

**No. W2013-00328-CCA-R3-CD  - Filed September 24, 2014**

_____

Defendants, Charles McClain, Lavino Horne, and Leterpa Mosley were indicted by the Shelby County Grand Jury, charged with one count of premeditated murder, one count of felony murder, and one count of especially aggravated robbery.  A jury found all three defendants guilty as charged in the indictment.  The trial court merged the felony murder conviction with the premeditated murder conviction for each defendant and sentenced all three defendants to life in prison for first degree murder and 25 years for especially aggravated robbery.  The trial court ordered the sentences to be served concurrently.  On appeal, Defendants Mosley and Horne contend that the trial court erred by failing to sever their cases.  All three defendants contend that the evidence was insufficient to support their convictions.  Defendant Mosley contends that the trial court erred by allowing into evidence a video taken from the library where the incident occurred and by suppressing Defendant McClain's statements to police.  Defendant McClain contends that he was prejudiced by the State's use of a hypothetical during voir dire and that the trial court improperly denied him the opportunity to rehabilitate a prospective juror.  Having carefully reviewed the record before us and the briefs of all the parties, we find no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant Charles McCain; Mark Mesler, Memphis, Tennessee, for the appellant, Lavino Horne; and Paul J. Springer, Memphis, Tennessee, for the appellant, Leterpa Mosley.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; Muriel Malone, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

*Facts*

On November 11, 2009, Tederrial Hancock, a student at the University of Memphis, was shot inside his car outside the Hollywood Public Library. Quintel Stubbs, who was also charged in the indictment, testified for the State in hopes of receiving favorable consideration as to his pending charges for his testimony. Stubbs testified that he had been coming from the Hollywood Public Library earlier that day when he saw Charles McClain. McClain told Stubbs that he and Leterpa "Terpa" Mosley were planning to rob Hancock because, McClain said, Hancock had robbed one of McClain's friends. McClain told Stubbs that Hancock "kept a whole lot of money on him." McClain told Stubbs that Mosley was going to rob Hancock, and McClain was going to kill him. McClain showed Stubbs the gun he was carrying. McClain and Stubbs exchanged phone numbers, and Stubbs told McClain "to be careful."

Later that day, McClain called Stubbs and told him to meet him and Mosley. McClain said that Hancock would be at the library, and they were going to rob him. They went to the area of the library where McClain expected Hancock to be, but Hancock was not there. Stubbs then went home and fell asleep. When he woke up, he called Lavino "Vino" Horne, and they went to "Hollywood." At around 8:30 p.m., McClain called Stubbs again and told Stubbs and Horne to meet McClain and Mosley at the library.

Stubbs and Horne met up with McClain and Mosley across the street from the library. McClain told them that the Hancock was at the library, but he "couldn't go up there because if [Hancock saw McClain's] face he's going to know what's up." McClain gave the gun to Horne. Stubbs, Horne, and Mosley then proceeded to walk towards the library. They did not see Hancock's car at the library, so Stubbs texted McClain. McClain texted Stubbs that Hancock's car was on the other side of the library. Stubbs, Horne, and Mosley walked around the library. They approached Hancock's car and spoke to him. Mosley asked to use Hancock's phone. Stubbs testified that he walked away, and he heard gunshots. He looked back and saw Horne and Mosley running away from the car, and he began to run. A video surveillance recording from the library was presented at trial, in which Stubbs identified Horne walking behind him and Mosley towards the victim's car.

-2-

Russell Potts was living in an apartment complex across from the library. On November 11, 2009, at around 9:00 p.m., he was watching television with his mother when he heard several gunshots. He looked to see what was happening, and he saw a car with its lights on and two men running across the parking lot. He could not see the men's faces.

After the shooting, Stubbs, Mosley, and Horne met up with McClain on Oakwood. Horne returned the gun to McClain, and Mosley gave McClain the victim's cell phone. Following an investigation, the four men were arrested. Stubbs testified that he initially told police that Mosley was the shooter because he "ain't want to put it on Vino [Horne]" because they were "like brothers." Stubbs also told investigators that Mosley had admitted to shooting the victim. Investigators showed Stubbs the library surveillance video, and Stubbs saw in the video that Mosley was the last person running away from the victim's car.

During a subsequent interview with the police, Stubbs and Horne were in adjacent interview rooms. Stubbs told Horne through the wall that they needed "to tell [the police] the truth," and Horne responded, "no way, cuz, no way in hell." Stubbs did not tell police that the four men met up on Oakwood after the shooting. He told police that he ran to his home. He told police that Mosley was wearing a black shirt. At trial, Stubbs identified Mosley in the video as wearing a white shirt. Stubbs wrote a letter to Mosley in jail apologizing for "putting him as the shooter."

On cross-examination, Stubbs acknowledged that cell phone records indicated that he called Mosley at 8:51 p.m. and 8:53 p.m. Stubbs called Mosley again at 9:14 p.m. and 9:19 p.m. When asked why he would have called Mosley if he was standing beside him, Stubbs responded, "I can't answer that. I don't know. He must have split up and that's when he went to the car. I probably called him. No telling what I called him for."

Officer Stephen Moore of the Memphis Police Department responded to the scene at approximately 9:00 p.m. He found Hancock deceased in the driver's seat of his car and observed several gunshot wounds to the victim. Forensic analysis concluded that Hancock had been shot by someone using a .380 caliber handgun. An autopsy revealed that Hancock had been shot seven times. The medical examiner estimated that he had been shot from intermediate range, which he explained is between six inches and four feet.

Kandace Turley and Tederrial Hancock had a son together. At the time of the shooting, Hancock had custody of their son. Ms. Turley had been dating McClain, and they were living at McClain's grandmother's house. When Hancock was awarded custody of Ms. Turley's son in October, 2009, she moved in with Hancock's mother to be closer to her son and "[t]o move away from Charles [McClain]."

-3-

On the day of the shooting, Ms. Turley saw Hancock (the victim) at a hospital where Hancock's mother was being treated after she suffered a stroke. Hancock asked Ms. Turley about a cell phone he had given to her. Hancock wanted to sell the phone to a friend. Ms. Turley had given the cell phone to McClain. McClain told Ms. Turley that he had texted Hancock that day and posed as someone named "Diamond." Justin Freeman, who went to the hospital with Hancock on the day of the shooting to visit Hancock's mother, intended to buy the cell phone. He testified that Hancock received a text from a female named "Diamond." Freeman and Hancock left the hospital together and went to the library. Hancock left the library at around 8:00 p.m. and walked back to his room on campus.

Sergeant Joe Stark of the Memphis Police Department was the lead investigator in the case. He interviewed Leterpa Mosley. Mosley told Sergeant Stark that he had been shopping at Best Buy at 9:00 p.m. on the date of the shooting. Sergeant Stark and Sergeant J.T. Max left Mosley in the interview room to gather additional information about the shooting. They returned and confronted Mosley with the information, and Mosley admitted that he was present when the victim was killed.

Lieutenant Eric Freeman of the Memphis Police Department took a statement from Lavino Horne on November 18, 2009. Horne told Lieutenant Freeman that he was present when the victim was killed but that he was not the shooter. Horne stated that he was walking away from the victim's car when the victim was shot three to five times with a .380 automatic handgun. Horne stated that he went home after the incident.

Cell phone records for the phone used by McClain showed that he made several calls or texts to Stubbs, Mosley and Hancock on November 11, 2009. McClain texted Stubbs and Hancock between 8:30 p.m. and shortly after 9:00 p.m. Cell phone records also showed that several calls or texts were made from Mosley's phone to Stubbs and McClain. All of these calls or texts were made in the general vicinity of the Hollywood Public Library.

Defendants Horne, Mosley, and McClain did not testify or present any evidence in their defense.

*Analysis*

*Motions to sever*

Defendants Horne and Mosley assert on appeal that the trial court erred by denying their respective motions to sever. Tennessee Rule of Criminal Procedure 8 provides for the joinder of defendants "if each of the defendants is charged with accountability for each offense included" in the indictment. Prior to trial and upon a motion of one of the

defendants, the trial court must grant a severance of the defendant if it finds a severance is "appropriate to promote a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(A). The decision to grant or deny a severance of defendants "is a matter that rests within the sound discretion of the trial court," and this court will not reverse the trial court's ruling "absent clear abuse of that discretion." *State v. Dotson*, 254 S.W.3d 378, 390 (Tenn. 2008). To determine whether the trial court has abused its discretion, this court examines the record to see whether the defendant was clearly prejudiced by the trial court's decision. *Id*.

Defendant Horne filed a motion for severance before trial. In his brief on appeal, Horne asserts that his motion for severance was never ruled upon because he was advised by his co-defendants' counsel that their motions for severance had already been denied. Horne asserts that he was not able to be part of the hearings on those motions. Horne requests that he be allowed to rely upon the arguments of counsel for Mosley and McClain. McClain does not raise a severance issue in this appeal. The State notes that Horne's argument for severance is different than Mosley's, and therefore, Horne cannot simply adopt Mosley's argument. The State responds that Horne has abandoned his motion for severance. *See State v. Banks*, 271 S.W.3d 90, 170 (Tenn. 2008) (citing Tenn. R. App. P. 36(a) in finding that a motion to suppress was abandoned where a defendant failed to obtain a ruling). The State argues that Horne has therefore waived this issue and it is reviewable only under the plain error doctrine.

Defendant Horne's entire argument on appeal regarding this issue consists of the following two contentions. He contends that if his case had been severed, his statement to police would not have been redacted to exclude his statements about his co-defendants, allowing the jury to "more fully understand" his role in the offense. Secondly, he contends that "there were at least four (4) witness[es] who would not have been called to testify . . . as they gave no testimony or evidence that would have been relevant to a trial for Mr. Horne." However, Defendant Horne does not identify which State's witnesses he claims gave no testimony that would have been relevant if he had been tried alone. We conclude that Defendant Horne has failed to show how he was prejudiced under either of these two contentions. Defendant Horne fails to state how the irrelevant testimony of four State's witnesses prejudiced him at trial. Defendant Horne is not entitled to relief on this issue.

Defendant Mosley asserts that if the trial court had properly severed his case, he would have been allowed to introduce into evidence the statements of Defendant McClain and a letter McClain wrote to Mosley urging him to "take the charges." Mosley argues that the evidence would have supported his position that his co-defendants "conspired to blame the crime" on him.

-5-

The State responds that the jury in fact heard evidence that the co-defendants attempted to "point the finger" at Mosley. Stubbs testified that he initially told police that Mosley was the shooter in order to protect Horne. Stubbs also testified that he wrote a letter to Mosley in jail apologizing for blaming the shooting on him. The jury also heard evidence that Horne was opposed to Stubbs' suggestion that they tell police "the truth" about Horne being the shooter. The State argues, therefore, that Defendant Mosley was not prejudiced by the suppression of this evidence. The State also responds that the identity of the actual shooter did not matter in this case because the defendants were convicted under a theory of criminal responsibility. Mosley admitted to police that he was present at the scene of the shooting. Cell phone records established that Mosley had phone contact with his co-defendants shortly before the shooting.

We fail to see how Defendant Mosley was prejudiced by the trial court's denial of severance. We agree with the State. Defendant Mosley is not entitled to relief on this issue.

*Admission of evidence*

Defendant Mosley contends that the trial court erred by suppressing Defendant McClain's statements to police and by admitting a surveillance video from the library. The admission of evidence at trial is entrusted to the broad discretion of the trial court, and as such, a trial court's ruling on the admission of evidence may only be disturbed upon a showing of an abuse of discretion. *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004) (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)). The trial court's exercise of discretion may not be reversed unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). For evidence to be admissible, it must be relevant. Tenn. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence ." Tenn. R. Evid. 401. Relevant evidence may be excluded by the trial court if its probative value is substantially outweighed by the danger of unfair prejudice. Tenn. R. Evid. 403.

Prior to trial, Defendant McClain filed a motion to suppress evidence. Following a hearing on the motion, a written order was entered by the trial court granting the motion to suppress because the State had announced that it did not intend to present evidence in opposition to the motion. At a subsequent hearing, Defendant Mosley again raised his motion for severance and argued to the trial court that he desired to use McClain's suppressed statements at trial to show that McClain, Stubbs, and Horne conspired to blame the shooting on Mosley. Defense counsel for Mosley stated, "our belief is that this was basically Mr. McClain, Mr. Horne, and Mr. Stubbs who got together and pointed the finger

at Mr. Mosley and set him up to be the fall guy for killing the victim." The State responded, and the trial court agreed, that statements made by McClain would be inadmissible hearsay at a trial against Mosley alone, if a severance was granted. The State pointed out that the evidence Mosley was seeking to admit was not exculpatory but rather inculpatory of Mosley as the shooter. The State also indicated that evidence that the other participants initially blamed Mosley for the shooting was going to be presented at trial. The trial court noted, "if the proof is going to be that your client [Mosley] was originally fingered as the shooter and then the proof is going to be presented by the State's witnesses that that's a lie, that's not true, your client was not the shooter, Mr. Horne was the shooter, I guess I'm having difficulty understanding what your objection is."

On appeal, Defendant Mosley cites Tennessee Rule of Evidence 803(1.2)(E) and argues that the statements of McClain made to police *after* the shooting would have been admissible as a hearsay exception had the statements not been suppressed by the trial court following the earlier hearing. Defendant is incorrect. Rule 803(1.2)(E) provides that a statement made "by a co-conspirator of a party *during the course of and in furtherance of* the conspiracy" is admissible as an exception to hearsay. Regardless of whether Defendant McClain's statements would have been excluded as hearsay, there was evidence presented at trial that there was an attempt by at least Stubbs and Horne to blame Mosley for the actual shooting. Therefore, the purpose for which Mosley sought to introduce the evidence was accomplished. Defendant Mosley was not prejudiced by the suppression of McClain's statements.

Defendant Mosley also asserts in his brief that he "continually requested to be allowed to [elicit] testimony regarding the co-defendant McClain's statements to police as well as a letter sent to Mosley." Mosley states that "[t]he trial court denied [his] request and ruled that defendant could not [elicit] such testimony." The record contains transcripts from three pre-trial hearings: a hearing on Defendant Mosley's motion to sever on June 10, 2010; a continuation of the hearing on Defendant Mosley's motion to sever and a hearing on Defendant McClain's motion to suppress on July 7, 2010; and a hearing on September 20, 2012, at which the trial court again addressed Defendant Mosley's motion to sever and his objection to the court's suppression of McClain's statements. There is only one instance in which Defendant Mosley requested to call a witness to testify. At the July 7, 2010 hearing, the State and the trial court noted that the letter allegedly written by McClain to Mosley in jail was not addressed to Mosley, and there was nothing to indicate that Mosley was the intended recipient because the police intercepted the letter from McClain. Defense counsel for Mosley stated, "we can call the police officer to the stand and we can call the jail people to the stand to see exactly how they recovered the letter. . . ." There was further discussion by the trial court and the parties, but there were no further requests to call any witnesses and

no denial of such request by the trial court. Thus, the record is contrary to Mosley's assertions.

Next, Defendant Mosley asserts that the library surveillance video should not have been admitted into evidence because it "lacked trustworthiness." The former security coordinator for the Memphis public library system testified that he maintained the video surveillance system for the library. He also testified that the timestamp on the video was between five and ten minutes behind the correct time. The faces of the individuals in the video are not visible to the viewer. At trial, Stubbs identified himself, Mosley, and Horne in the video. He acknowledged that it would be difficult for someone else to identify him from the video. At the pretrial hearing during which Defendant Mosley objected to the admission of the video, the trial court noted that Mosley's objection goes to the weight of the evidence and the credibility of Stubbs. We agree. The trial court did not abuse its discretion in admitting the video into evidence.

Defendant Mosley is not entitled to relief on any of his evidentiary issues.

*Sufficiency of the evidence*

All three defendants contend that the evidence was insufficient to sustain their convictions for felony murder and especially aggravated robbery.

Our review of a defendant's challenge to the sufficiency of the evidence to sustain a conviction is governed by well settled principles of law. Our standard of review regarding sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Id*. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. *State v. Dorantes*, 331 S .W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In *Dorantes*, our supreme court adopted the United States Supreme Court standard that "direct and

circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *Id*. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. *Id*.

Defendants were convicted of especially aggravated robbery which is the intentional or knowing theft of property from the person of another by violence or putting the person in fear, accomplished with a deadly weapon, and where the victim suffers serious bodily injury. Tenn. Code Ann. §§ 39-13-401, -403. "Serious bodily injury" means bodily injury that involves: a substantial risk of death, protracted or obvious disfigurement, or a protracted loss of substantial impairment of a function of a bodily member. Tenn. Code Ann. § 39-11-106(a)(34). Felony murder, as applicable in this case, is a killing of another committed in the perpetration of a robbery, with intent to commit the robbery. Tenn. Code Ann. § 39-13-202(a)(2), and (b).

Defendants present similar arguments in challenging the sufficiency of the convicting evidence. Each defendant attacks the credibility of Quintel Stubbs. Defendant Mosley asserts that the only evidence supporting his guilt is the testimony of Stubbs, who "lacks any credibility whatsoever[,]" and the testimony of Sergeant Starks that Mosley admitted to being at the scene of the shooting. Mosley contends that Sergeant Starks' testimony is insufficient to corroborate Stubbs' testimony; however, Mosley fails to cite any authority regarding the corroboration of accomplice testimony. We note that the State also fails to cite authority or otherwise respond to this contention. Defendant Horne asserts that the evidence was insufficient to support his convictions because there was "not one piece of physical evidence" connecting him to the offense, and that the only evidence against him was his own statement that he was present when the shooting occurred and the testimony by Stubbs that Horne was present at the time of the shooting. Horne also attacks the credibility of Stubbs and points out that Stubbs testified that Horne was not present during Stubbs' and McClain's conversation earlier that day in which McClain told Stubbs of his intention to rob and kill the victim. Finally, Defendant McClain also attacks Stubbs' credibility and asserts that Stubbs' testimony was not sufficiently corroborated.

The State responds that the evidence is sufficient to establish that all three defendants conspired to rob the victim and that the victim was killed during the perpetration of the especially aggravated robbery.

Viewed in the light most favorable to the State, the evidence shows that on November 11, 2009, the three co-defendants, along with Quintel Stubbs, met at the library where they anticipated the victim would be. Stubbs testified that McClain told him earlier that day that he and Mosley intended to rob and kill the victim because the victim had previously stolen

from a friend. McClain showed Stubbs the gun he intended to use to shoot the victim. Stubbs and Horne met McClain and Mosley at the library. Stubbs testified that McClain gave the gun to Horne. Stubbs, Mosley, and Horne approached the victim in his car and Mosley took the victim's phone. The victim was shot seven times inside his car. The three men ran from the scene and met up afterwards. Stubbs testified that following the shooting, Mosley gave McClain the victim's phone, and Horne gave the gun back to McClain. Cell phone records established that McClain made several phone calls or texts to Stubbs, Mosley, and the victim on the day of the shooting. McClain called or texted Stubbs and the victim between 8:30 p.m. and shortly after 9:00 p.m., when the shooting occurred. These calls or texts were made in the general vicinity of the Hollywood Public Library. Mosley also made several calls or texts to Stubbs and McClain on the date of the shooting, and those calls were also made in the vicinity of the library. Video from the library showed the men walking towards the victim's car, and a witness saw two men running from the scene after the shooting. Mosley admitted to police that he was present at the scene of the shooting. Horne denied killing the victim but said that he was present when the victim was shot with a .380 caliber automatic handgun. Autopsy results confirmed that the victim was shot several times by a .380 caliber handgun. The medical examiner testified that the victim was shot from a range of between six inches and four feet, which is consistent with Stubbs' testimony that the victim was shot while the men were standing beside the victim's car.

A defendant can be criminally responsible for the offenses committed by another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the [defendant] solicit[ed], direct[ed], aid[ed], or attempt[ed] to aid another person to commit the offense." Tenn. Code Ann. § 39-110-402(2). Criminal responsibility is not a separate crime, but "a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999). Criminal responsibility represents a legislative codification of the common law theories of aiding and abetting and accessories before the fact. *Id*. at 171 (citing *State v. Carson*, 950 S.W.2d 951, 955 (Tenn. 1997)). "No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible." *State v. Caldwell*, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002). Criminal responsibility "requires that a defendant act with a culpable mental state, [i.e.], the 'intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense.'" *Carson*, 950 S.W.2d at 954 (quoting Tenn. Code Ann. § 39-11-402(2) (1991)). "A person acts with intent as to the nature or result of conduct when it is that person's conscious objective or desire to engage in the conduct or cause the result." *Id*.

It is well-settled that, "[i]n Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn.

-10-

2001) (citing *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994)). This "very salutary rule" is designed to prevent the "obvious dangers" of allowing a defendant to be convicted solely on the basis of an accomplice's testimony. *Sherrill v. State*, 204 Tenn. 427, 321 S.W.2d 811, 814 (Tenn. 1959), *overruled on other grounds by State v. Collier*, 411 S.W.3d 886 (Tenn. 2013). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate the testimony of an accomplice. *State v. Copeland*, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984).

With respect to the nature, quality, and sufficiency of the evidence necessary to corroborate an accomplice's testimony, this court has held as follows:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.
>
> . . . .
>
> The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplice's testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

*State v. Griffis*, 964 S.W.2d 577, 588-89 (Tenn. Crim. App.1997) (citations omitted).

The proof necessary to corroborate the accomplice's testimony must include "some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity." *Shaw*, 37 S.W.3d at 903 (quoting *Bigbee*, 885 S.W.2d at 803). In other words, the corroboration must include some fact establishing the identity

of the defendant as a criminal actor. *State v. Boxley*, 76 S.W.3d 381, 387 (Tenn. Crim. App. 2001). It is generally for the trier of fact to determine whether sufficient corroboration exists. *Id*. (citing *Shaw*, 37 S.W.3d at 903). However, as this court has previously pointed out, "[e]vidence which merely casts a suspicion on the accused . . . is inadequate to corroborate an accomplice's testimony." *Id*. (quoting *Griffis*, 964 S.W.2d at 589).

Considering the proof in the record before us, we find the evidence sufficient to corroborate the testimony of Stubbs as to all three defendants. As to Defendant Mosley, Stubbs' testimony was corroborated by cell phone records showing that Mosley made phone calls or texts to Stubbs and McClain shortly before and at the time of the shooting in the vicinity of where the shooting occurred. Defendant Mosley's admission to police that he was present at the time of the shooting also corroborates Stubbs' testimony of Mosley's involvement.

As to Defendant Horne, he also admitted to police that he was present at the time of the shooting. His statement to the police included the fact that the victim was shot using a .380 caliber handgun. There was independent testimony that the victim was killed by the same kind of weapon. This corroborates Stubbs' testimony. Stubbs' testimony was also corroborated by Sergeant Starks' testimony that he overheard Stubbs' and Horne's conversation through the interview room walls in which Horne told Stubbs, "no way, cuz," which was in response to Stubbs' suggestion to Horne that they "tell [the police] the truth."

We note that the State asserts in its brief that Defendant Mosley's phone records establish that on the date of the shooting, "he spoke with Mr. Stubbs, Defendant Horne, and Defendant McClain a number of times." Defendant Horne asserts that he did not participate in the planning of the robbery or any of the phone calls between Stubbs, McClain, and Mosley. Having reviewed the transcript and the phone records admitted as exhibits at trial, there is no evidence that Defendant Horne made or received calls or texts from the other defendants. In fact, Stubbs testified that Defendant Horne did not even have a cell phone at the time of the offense. Stubbs also testified that Horne was not present during his earlier conversations with McClain, in which McClain told Stubbs that he intended to rob and kill the victim. Nevertheless, we conclude that Stubbs' testimony was sufficiently corroborated that Horne participated in the robbery and killing of the victim.

As to Defendant McClain, Stubbs' testimony was corroborated by cell phone records that established that McClain made calls or texts to Stubbs and the victim on the day of the shooting and in the vicinity of the shooting. Several of these calls or texts were made between 8:30 p.m. and 9:00 p.m., the approximate time of the shooting. McClain's phone

records show no further calls to the victim's phone after 9:02 p.m., suggesting that McClain was aware that the victim no longer had his phone. Cell phone records and testimony presented at trial support the State's theory that McClain "lured" the victim to the library by calling his cell phone and pretending to be a female named "Diamond." This evidence corroborates Stubbs' testimony that McClain had directed the other men to meet him at the library where he anticipated the victim would be.

We conclude that the evidence is sufficient to sustain all three defendants' convictions for especially aggravated robbery and felony murder. Defendants are not entitled to relief on this issue.

*Voir Dire*

Defendant McClain contends that he was prejudiced by the State's use of a hypothetical during voir dire in discussing criminal responsibility. McClain also contends that the trial court erred by denying him an opportunity to rehabilitate a juror who was dismissed for cause after the prospective juror indicated that he could not apply the law as it relates to felony murder.

During voir dire, the prosecutor attempted to explain to the prospective jury the theory of criminal responsibility using a hypothetical of an aggravated burglary involving several actors, including a planner, a driver, a look-out, etc. The prosecutor defined criminal responsibility for the prospective jury, and the potential jurors agreed that each actor in the hypothetical would be responsible for the conduct of the other actors in the hypothetical. In explaining the offense of felony murder, the prosecutor expanded the hypothetical to include a scenario in which an unintended victim was killed during the course of the aggravated burglary. Two potential jurors expressed disagreement with the conclusion that each actor in the hypothetical would be guilty of felony murder. Upon further questioning by the trial court, one of the potential jurors, Mr. Johnson, stated that did not believe he could apply the law fairly. Counsel for Defendant McClain requested an opportunity to voir dire the juror, asserting that the law regarding criminal responsibility and felony murder had not been fully explained to the juror. The trial court stated that the juror "ha[d] made it pretty clear that he doesn't agree with [the law] and he can't follow it[,]" and the trial court excused the juror.

The State argues that Defendant McClain's first issue regarding the State's use of a hypothetical is waived and should therefore be subject only to a plain error analysis. When a defendant fails to make a contemporaneous objection and fails to raise an issue in his motion for new trial, the issue is waived and may only be reviewed in accordance with the plain error doctrine. *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000). Appellate relief is generally not available when a party has "failed to take whatever action was reasonably

available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). In this case, none of the three defendants contemporaneously objected to the State's use of the hypothetical during voir dire, nor did they request a mistrial. Despite the fact that Defendant raised this issue in his motion for new trial, it is waived due to the fact that Defendant failed to object and/or ask for a mistrial and thus acquiesced in the procedure. Even if not waived, the issue is without merit.

"The ultimate goal of voir dire is to [e]nsure that jurors are competent, unbiased, and impartial. . . ." *State v. Cazes*, 875 S.W.2d 253, 262 (Tenn. 1994). The appellate courts in this State have determined that it is improper to ask prospective jurors hypothetical questions that seek to commit the jurors to a specific course of action. *Solomon v. State*, 489 S.W.2d 547, 550 (Tenn. Crim. App. 1972). The trial court has wide latitude in conducting the examination of prospective jurors, and its decision will not be disturbed unless there is an abuse of the court's discretion. *State v. Irick*, 762 S.W.2d 121, 125 (Tenn. 1988); *State v. Black*, 618 S.W.2d 526, 527 (Tenn. Crim. App. 1981). Our review of the record shows that the State did not, in posing its hypothetical to the jury, ask for a commitment from the prospective jurors. We therefore conclude that the trial court did not abuse its discretion.

Defendant McClain also contends that the trial court erred by dismissing prospective juror Johnson for cause without giving defense counsel an opportunity to rehabilitate him. When asked whether he could apply the law as it relates to felony murder, Mr. Johnson stated, "No, because I'm just a look-out. I didn't kill nobody [sic]." He further stated, "I understand what [the law] says . . . . I don't know if I can apply it to everybody." Upon further questioning, Mr. Johnson responded, "To say that all of them guilty of murder, I can't do that . . . . I just can't do it." The trial court excused Mr. Johnson, and defense counsel requested an opportunity to rehabilitate the juror. The trial court stated its reasons for excusing Mr. Johnson as follows:

> Mr. Johnson has made it pretty clear that he doesn't agree with [the law] and can't follow [the law]. And I think that's the test.
>
> And if it's – you know, I'm very protective of my challenges for cause and I've always felt that jurors that can give me any indication whatsoever that they can follow the law, even if it's wavering to some extent, I'm going to leave them on and give them that right to do that.
>
> But when they tell me just outright that they can't – they don't agree with the law and they can't follow that law, then we're just wasting time. So I'll note your exception.

Tennessee Rule of Criminal Procedure 24 governs voir dire. Our supreme court has interpreted the rule to give the "trial judge the right to excuse a juror for cause without examination of counsel." *State v. Sexton*, 368 S.W.3d 371, 391 (Tenn. 2012) (quoting *State v. Hutchison*, 898 S.W.2d 161, 167 (Tenn. 1994)). In reviewing the trial court's disqualification of a potential juror, the standard historically applied has been that the trial court's decision must be upheld on appeal absent a clear abuse of discretion. *State v. Schmeiderer*, 319 S.W.3d 607, 625 (Tenn. 2010) (appendix).

We conclude that the trial court did not abuse its discretion by excluding the prospective juror. Mr. Johnson unequivocally expressed his inability to apply the law and find criminal responsibility for felony murder. Defendant McClain is not entitled to relief on this issue.

In conclusion, having carefully reviewed the record before us and the briefs of all the parties, we find no error and affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE